## DAVID W. CODY

*v.*

### THE EXECUTOR OF JOHN BUNN, deceased, and others.

1. Courts sometimes, in construing wills, read "or" as meaning "and," and "and" as meaning "or," but such departures from the words of the will are never made, except it is plain that it is necessary to do so in order to give effect to what appears to be the clear intention of the testator.

2. All doubts are to be resolved in favor of the testator's having said exactly what he meant.

On demurrer.

*Mr. Frank E. Bradner,* for the complainant.

*Mr. James L. Griggs,* for the defendants.

VAN FLEET, V. C.

This is a suit for a legacy. Whether the complainant is entitled to recover or not depends entirely on the construction which shall be given to the will of Conrad Bunn, deceased. The testator died in June, 1866. By his will, after directing the conversion of all his estate into money and the payment of his debts and funeral expenses, he said :

"I do give and bequeath the balance to my five children equally, except as is hereinafter mentioned. To my son Martin Bunn the one-fifth of my said effects; to my son William C. Bunn the one-fifth do.; to my son John Bunn the one-fifth do.; to my son Ferdinand the one-fifth of my said effects, *or to each of their lawful heirs;* and to Mary Ann Bunn, my daughter and wife of David Williams, the use of the interest of the one-fifth of my said effects, except in case the said Mary Ann, wife of the said David Williams, has heirs or an heir at the time of her death, then the said share to equal; if not, then said share of the said Mary Ann, wife of said David Williams, to revert back to the above mentioned Martin Bunn, William C. Bunn, John Bunn and Ferdinand Bunn, *or their lawful heirs.* And I do hereby order my executors to pay to the said Mary Ann, wife of the said David Williams, the interest due on the one-fifth of my effects each and every year to the time of her death."

Four-fifths of the testator's estate were paid to his four sons, in 1867. Mrs. Williams, who was entitled to the interest of the other fifth during her life, died in April, 1889. She left no child or descendant of a child at the time of her death. Counsel stated on the argument that they were agreed in opinion, that it is plain that the testator meant by the words "heirs or an heir," in designating who should take the principal of the one-fifth on the death of the life-tenant, the children or child of the life-tenant. I concur in that view. And I am of opinion that what the testator meant by the words, "then said share to equal," is, that then said share shall be equally divided amongst them, so that if the testator had put in words all that he intended to say, that sentence of his will would have read in this wise : except in case the said Mary Ann, wife of the said David Williams, has heirs or an heir at the time of her death, then the said share shall be equally divided amongst them. John Bunn, one of the testator's four sons, died in the lifetime of his sister, Mrs. Williams, leaving an only child, and also leaving a will. John gave all his property to his executor. The complainant sues in the right of John's child, the child having assigned to the complainant all his right under his grandfather's will. The question to be decided is, whether the complainant or John's executor is entitled to that part of the testator's estate, set apart for the use of Mrs. Williams during her life, which would have been payable to John in case he had survived Mrs. Williams. John's executor will be entitled to prevail in this suit, unless it shall be found that, by the true meaning of the will, the testator meant, in case John died during the life of Mrs. Williams, his share of the fund set apart for her use should go to his children or child.

The words to which we must principally look in trying to discover the testator's meaning are these : "if not"—that is, if Mrs. Williams does not leave children or a child at the time of her death—

"Then said share of the said Mary Ann, wife of said David Williams, to revert back to the above mentioned Martin Bunn, William C. Bunn, John Bunn and Ferdinand Bunn, or their lawful heirs."

But for the words, " or their lawful heirs," or if the words had been " and their lawful heirs," there can be no doubt that, according to well-established rules of construction, John would have taken a vested interest, such as would not have been subject to be defeated by his death in the lifetime of his sister. But the presence of these words renders that construction impossible, unless we say that they mean nothing, and that cannot be said truthfully in this case, because it is quite plain, as I think, that they were used to show that the testator meant in case the primary legatee or parent was not alive when the legacy became payable, his children or child should take it; or unless we say that the word " or " should be read as meaning " and," and thus make the gift to John Bunn and his lawful heirs, and not as it now stands, to John Bunn, or his lawful heirs. Courts, it is true, sometimes in construing wills read " or " as meaning " and," and " and " as meaning " or," but such departures from the words of the will are never made, except it is plain that it is necessary to do so in order to give effect to what appears to be the clear intention of the testator. *Holcombe* v. *Lake, 4 Zab. 686, 688; S. C. on error, 1 Dutch. 605.* All doubts are to be resolved in favor of the testator's having said exactly what he meant. *Courter* v. *Stagg, 12 C. E. Gr. 305, 307.* The testator, it is important to observe, used this phrase, or one substantially like it, in a prior part of his will. In giving direction as to how the residue of his estate shall be divided, he says, that one-fifth of it shall be paid to each of his four sons, and then adds, " or to each of their lawful heirs." The purpose of this provision is quite plain; he meant to provide against a lapse in case either of his sons died in his lifetime leaving issue. Our statute rendered such a provision unnecessary to prevent a lapse, but the phrase is none the less significant as evidence that the testator intended, that if the primary legatee did not live to take the legacy, his children or child should take it by way of substitution.

The meaning of the testator seems to me to be quite obvious. Looking at the whole of that part of the will which is brought in judgment, and giving full effect to all its words, I think it quite clear, that the testator meant, that if Mrs. Williams died

without leaving a child, and that if either of his sons died in Mrs. Williams's lifetime, and left a child, such child should take, as substituted legatee, that part of the fund, set apart for the use of Mrs. Williams, which its father would have taken if he had survived Mrs. Williams. The testator meant that the person who took his property should be of his own blood. This construction conforms to precedent. In *Finlason* v. *Tattoch, L. R. (9 Eq. Cas.) 258,* the testator directed that the residue of his estate should be invested and the interest of it paid to his widow during life, and he then said, "and at her decease the principal and interest to be equally divided amongst my children or their heirs." One of his children died in the widow's lifetime, having, however, first made an assignment of his share of the residuary estate. The question presented for judgment was, whether or not the assignee acquired anything by the assignment. The master of the rolls, Lord Romilly, held that he did not. He said: "I have no doubt that the meaning is to give by way of substitution. He gives a share to each child; and if the child be dead, to his heirs—that is, the next of kin—according to the statute."

The complainant is entitled to recover.