SAMUEL T. LIPPINCOTT, trustee &c.

*v.*

ANNIE E. STOTTSENBURG.

---

SAMUEL T. LIPPINCOTT, trustee &c.

*v.*

VIOLA A. PANCOAST.

1. A father, by his will, directed his executors to convert the residue of his estate into money and "pay" a certain portion of that money to trustees for the support and benefit of his son W., and then directed the trustees to put it at interest and pay the entire interest, "arising from *his share*," to W., until such

time as they should deem it proper to pay him the principal, and at that time to pay the principal to him " *or his heirs.*" Then, without making provision for the event of the trustees never deeming it proper to pay the principal to W., the father disposed of the remaining portions of the residue of his estate.

2. A mother, likewise, by her will, directed her executors to convert the residue of her estate into money and " pay " a certain portion of that money, which she declared to be *intended for her son W.*, to trustees, and directed the trustees to invest it and pay the entire interest of it to W., until they should deem it prudent to " pay " the principal to him, and, at such time, they should pay " *over* " the principal to him. Then, without making provision for the event of the trustees never deeming it proper to pay the principal to W., she disposed of the remaining portions of the residue of her estate.

*Held,* that, in both these cases, although the trustees never deemed it prudent to pay it to him, W.'s right to the principal was vested, and that, upon his death, it must be paid to his personal representatives.

On bills and answers.

The parties to these suits are identical. The object of the bills is to secure a construction of portions of the wills of David C. and Ann H. Pancoast, husband and wife, late of the county of Salem.

As the questions arising are similar in character, the cases were argued together, and, with little difficulty, may be decided in the same way.

The will of Ann H. Pancoast was admitted to probate in January, 1879. By it, the testatrix gave her entire estate to her husband for life, and then made specific bequests of her watch and silverware to take effect at his death, and directed that the executors of her will should then, by public sale, dispose of all her real estate and divide the proceeds of such sale into eight equal parts. The will then proceeds in these words:

"Two of said equal parts I direct my executors to pay to Joseph D. Pancoast and Reuben Woolman, to be held by them in trust for the equal benefit of my two sons, William H. and Charles F. Pancoast. And I hereby appoint the said Joseph D. Pancoast and Reuben Woolman trustees of the said two shares intended for my two sons, William H. and Charles F. Pancoast, and direct the said trustees to put the said two equal parts or shares at interest (well secured) and pay to my two sons annually, in equal shares, the interest arising from the said two parts, until such time as the said trustees, or the survi-

vor of them, shall think it proper and prudent to pay said two parts or shares to my two sons, William H. and Charles F. Pancoast, at which time I direct that the said two parts or shares shall be paid over to my said sons. The other six equal parts of the said eight, arising from the sale of said real estate, I give and devise to my six other children, named as follows, viz., Joseph D. Pancoast, David Pancoast, Mary D. Lawson, Martha F. Lippincott, Annie E. Stottsenburg and Isabella Pancoast, one of said parts to each child, to them, their heirs and assigns."

Joseph D. Pancoast and Samuel T. Lippincott were appointed executors of the will.

The will of David C. Pancoast was made in October, 1879, after his wife's death, and was admitted to probate in December, 1881. By it, the testator, after making some specific bequests, giving $1,000 to his daughter Isabella and providing small legacies for two of his grandsons, proceeded, in that part of the will which concerns this inquiry, in this language :

"*Fifth.* All the rest, residue and remainder of my estate, real and personal, wherever situated, I direct my executors to sell and dispose of, at such times and in such manner as in their judgment shall be for the interest of all concerned, and, after payment of my just debts and the devise hereinbefore made, to divide the net proceeds into seven equal parts, one of said seven equal parts I direct my executors to pay to Joseph D. Pancoast and Reuben Woolman, to be held by them in trust for the benefit and support of my son, William H. Pancoast. And I hereby appoint the said Joseph D. Pancoast and Reuben Woolman trustees * * * of the share herein devised for the benefit and support of my son, William H. Pancoast. And I direct said trustees to put the same at interest (well secured) and pay to my said son, William H. Pancoast, annually, the interest arising from his share, until such time as they, the said trustees, or the survivor of them, shall think it prudent and proper to pay the principal or share to my said son, William H. Pancoast, at which time I direct that the share shall be paid to him or his heirs. The other six equal parts of the seven, arising from the net proceeds, I give and devise to my six other children, named as follows, viz., Joseph D. Pancoast, David Pancoast, Mary D. Lawson, Annie E. Stottsenburg, Charles F. Pancoast and Isabella Pancoast, one of said equal parts to each child, to them, their heirs and assigns."

Samuel Borton and Edward B. Bullock were appointed executors of the will.

Joseph D. Pancoast died in December, 1879, and Reuben Woolman was discharged from the executorship and trusteeship, under both wills, in January, 1883. Thereupon the complain-

ant was duly appointed administrator *de bonis non cum testamento annexo* of the estates of Ann and David, and trustee under their respective wills. In October, 1883, $2,949.90 were had and afterwards duly invested by the complainant in trust for William H. Pancoast, under the will of Ann Pancoast, and, in the same month, $4,812.07 were likewise received and afterwards invested by him in trust for William H. Pancoast, under the will of David C. Pancoast. In 1887, William H. Pancoast married the defendant Viola A. Pancoast, and, in December, 1888, died childless, being then a resident, of Colorado, having made his will, by which he devised and bequeathed his entire estate to his wife, and made her the sole executrix of his will. The trustee never thought it prudent or proper to pay William the principal of either trust fund. He now asks direction in the distribution of that principal. He is in doubt whether it should be paid to the defendant Viola A. Pancoast, or to the heirs at law or next of kin respectively of Ann and David Pancoast. All persons who are in interest in the disposition of either fund are parties to the suits.

*Mr. W. T. Hilliard,* for the complainant.

*Mr. C. H. Sinnickson,* for the defendant Viola A. Pancoast.

*Mr. D. J. Pancoast,* for the remaining defendants.

THE CHANCELLOR.

Shortly stated, the testamentary provisions which concern this inquiry are as follows: Ann Pancoast directs that the residue of her estate shall be converted into money and that that money shall be divided into as many parts as she has children. She then declares that two of the parts are intended for two sons, whom she names, and directs her executors ". to pay " those parts to trustees, who, in turn, are required to invest them and pay the entire income therefrom equally to her two sons, until the trustees shall deem it prudent " to pay " the principal to the sons, and then, she directs, the " shares shall be paid over to my said

·sons." Then, without making disposition of the shares in event of its never being deemed proper or prudent, by the trustees, to ·pay them over, she proceeds to dispose of the remaining six shares of the residue of her estate.

David C. Pancoast directs a conversion of the residue of his ·estate into money and the division of it into seven equal parts, one of which parts is to be paid to trustees for the benefit and support of his son William.    The trustees are to put it at interest and to pay the entire interest "arising from his share" to William, until such time as they may deem it proper and pru-dent to pay him the principal, and that, at such time, they shall pay the principal to William "or his heirs."    Without making disposition over, in the event of the trustees never thinking it proper to pay William the principal, the testator proceeds to dispose of the remaining shares of the residue of his estate.

In behalf of the testators' next of kin, it is insisted that the direction to pay the principal funds to William, upon the deter-mination by the trustees that it is prudent to do so, makes that determination a condition precedent to the vesting of those funds in him, and as that event never happened, that the funds did not vest, and are therefore now parts of the estates of the respective testators, of which they died intestate.

The rule, which is invoked in support of this position, is stated in *2 Williams on Executors 1232*, in this language:

"Where there is no gift, but a direction to pay, or divided and pay at a future time or on a given event, the vesting will be postponed till after that time has arrived, or that event has happened, unless from particular circum-stances, a contrary intention is to be collected."

In the statement of this rule it is perceived that, before it can be applied, inquiry must be made whether there are expressions, in the will considered, which explain and control the terms relied upon as creating a condition precedent to the vesting of the prin-cipal, and give to those terms a different import.

In the first place, it is observed, in the wills before me, that, until the happening of the event upon which the principal is to be paid, William is to have the entire interest of the trust funds. There is no limitation as to the continuance of the payment of

interest and there is no other disposition of it, or of the fund, from which it comes.

In *Adamson* v. *Armitage, 19 Ves. 419,* Sir William Grant. said : " In a case of a devise of realty words of limitation must be added to give more than an estate for life. In case of personalty words of qualification are required to restrain the extent and duration of interest. *Prima facie,* the gift of the produce of a fund is a gift of that produce in perpetuity, and is consequently a gift of the fund itself, unless there is something upon the face of the will to show that such was not the intention."

It is a well-established rule of construction, in this state, that a gift of the interest or produce of a fund, either directly or through the intervention of a trustee, without limitation as to continuance, is a gift of the fund itself. *Craft* v. *Snook, 2 Beas. 122 ; Gulick* v. *Gulick, 10 C. E. Gr. 324 ; S. C. on appeal, 12 C. E. Gr. 498 ; Huston* v. *Read, 5 Stew. Eq. 596 ; Post* v. *Rivers, 13 Stew. Eq. 21 ; Bishop* v. *McClelland, 17 Stew. Eq. 450.*

Under this rule the principal would vest upon the death of the testator. Here, then, terms which are apt to create a condition precedent to the vesting, and terms which favor an immediate vesting, meet. Of such a situation Mr. Roper says :

" When the period of payment or enjoyment of the fund is deferred until the legatee shall attain twenty-one, and the first gift of it is made to him *when* or *after* he shall attain that age, but in the *meantime* the property is given to a parent, guardian or trustee, for the legatee's benefit, the words ' when ' or ' after,' which import a condition precedent to the vesting of the legacy, will not be permitted to produce that effect ; on the contrary, they will be considered as merely descriptive of the *time* when the legatee was to be let into the possession of the fund, and then, according to the rule mentioned in the first section " [that when a legacy is given to a person *to be paid* or *payable* at or when he shall attain the age of twenty-one, it is vested upon the testor's death as *debitum in præsenti solvendum in futuro,* the time being only annexed to the *payment* and not to the *gift* of the legacy], " the interest in the legacy will vest at the death of the testator, and, if the legatee dies before twenty-one, his personal representative will be entitled to the money. The principle is this : since the *whole* interest in the fund is given in one way or the other to or for the benefit of the legatee, it could not be the testator's intention to make it contingent whether the legatee should have the absolute interest." 1 *Rop. Leg. 573.*

It is observed, in the second place, that the wills of the testator and testatrix, respectively, use language indicative of a contemplation of the principal fund as the property of William, the possession of which he is presently deprived. Mrs. Pancoast, in her will, speaks of it as being "*intended*" for him. The trustees are to hold the fund until they deem it prudent to "*pay*," not to *give*, it, and they are to pay it "*over*." Mr. Pancoast, in his will, directs the payment to William of interest "arising from *his share*," and that, when they deem it prudent to do so, the trustees are to "*pay*" the principal to him "or his heirs."

The ordinary and natural signification of the word "*pay*," as here used, is to render that which is due. When one pays "*over*," he gives up that which belongs to another.

In the third place, there is no provision in either will for the event of the non-happening of the contingency upon which William is to be paid the principal. The wills undertake to dispose of the residue of the estates with which they deal. Courts do not favor a construction that will admit of partial intestacy, and they will adopt any reasonable interpretation which will prevent it. I think that such an interpretation of the wills before me is apparent. For some undisclosed reason William Pancoast was deemed to be unfit to be let into possession of the principal of the trust funds. To prevent his dissipation or misuse of them, and to secure to him the enjoyment of their product, they were placed in the hands of trustees to hold until he should satisfy the trustees of the propriety of their giving him the possession of them, or, that failing, for his life. The event which is claimed as a condition precedent affected possession only, not the gift itself. It was created by parents, *in terrorem*, to induce some change of conduct. William's right and interest in the principal, however, was vested. At his death the purpose of the trust being fulfilled, his personal representative, executor or administrator, became entitled to demand and have the funds.

I think that the words "or his heirs," in the will of David C. Pancoast, were used simply to indicate that William was to have the entire and absolute interest in the fund referred to.

Soule *v.* Passaic.

But if they are to be regarded as words of substitution, in the event of William's death before the payment over to him, it is quite clear, as they deal with personalty, that they must be held to mean the persons who would be entitled to the personal estate of William by virtue of the statute of distributions, if he had died intestate. *Hawk. Wills 92.*

At his death, William was domiciled in Colorado. The distribution of his personal estate therefore must be governed by the statute of distributions of that state. He had no children, but left a widow. In such a case, under the statute of distributions of Colorado, his entire personal estate will go to his widow. It is, then, immaterial here whether the words " or his heirs " are words of substitution, for whether they be words of substitution or limitation the practical result is the same.

The trustee will be directed to pay the principal of both funds to the personal representatives of William H. Pancoast.