In the matter of the last will and testament of LOUISA M. WADSKIER, deceased.

[Submitted March 27th, 1916.　Decided June 19th, 1916.]

Where a testatrix by her will made a gift in the following words : "To my niece, Elizabeth S. White, I give the sum of $10,000 for her personal use, not to be given away to missions, but invested for her benefit"— *Held* that the bequest was absolute, and that by reason of her death her legal representative is entitled to receive this sum from the trustee.

---

On appeal from a decree of the prerogative court.

*Mr. John F. Harned,* for the appellant.

*Mr. Charles V. D. Joline,* for the respondent.

PER CURIAM:

The sole question involved in the present case is the true construction of subdivision F of paragraph 4 of the will of the testatrix.

The proceeding was instituted in the orphans court of Camden county, and the true construction of the testamentary provision

was declared by that court in an opinion filed in the case by Probate Judge Boyle, in which subdivision F is set out at length. That opinion is as follows:

"BOYLE, J.

"This is a proceeding for the construction of subdivision F, paragraph 4, of the will of Louisa M. Wadskier, deceased, in the following language: 'To my niece, Elizabeth S. White, I give the sum of ten thousand dollars for her personal use, not to be given away to missions, but invested for her benefit.' The said Elizabeth White died on the 12th day of February, 1915, leaving a last will, naming as executor the petitioner. There was an agreed state of facts presenting for decision the single question as to whether the above request was absolute or qualified. The trustee contends that the provision in question, in connection with other sections of the will, made him a trustee for the said $10,000, to pay the interest thereof to Elizabeth White during her life, and after her death to divide this sum among the persons named as beneficiaries of the general estate. One of the premises upon which this construction is based is without support, so far as I can ascertain by the most careful scrutiny of the will. The trustee, however, has insisted with such confidence that a division of this fund among the general legatees was contemplated by the will that I shall refer with some detail to the provisions indicating the apparent scheme of distribution testatrix had in mind.

"The first, second, third and last paragraphs of the will deal with matters unconnected with the trustee and the distribution through him of the estate. The fourth paragraph may be termed the disposal part of the will, and to it alone we turn to ascertain the intention of the testatrix respecting the division of her estate. In the first part of this paragraph, the estate, real and personal, is given to a trustee with no mention of any duties toward any person to share in this trust. The preliminary instructions and grant of authority had reference only to the investment, control and disposition of the estate in possession of the trustee. The duties of the trustee touching this fund are set forth in twenty-four succeeding subdivisions of this para-

graph. The relation of the trustee to each of these provisions is separate and distinct.

"In subdivision A his duty is plainly indicated by adding to the words of gift the phrase 'and I direct my trustee to pay.' The provision for a lapse of the legacy herein bequeathed, and the evident identification of 'this money,' 'this portion,' clearly prove the separate and distinct relationship of the trustee to this bequest. In subdivisions B, C, D and E the duty of the trustee consists of one act, the payment of the sums specified to the persons named. The words 'and I direct my trustee to pay,' while not expressed, are plainly implied in each of these subdivisions. Is not subdivision F also elliptical and properly construed should it not read, to my niece Elizabeth White I give and I direct my trustee to pay the sum of $10,000 for her personal use, &c.

"In this manner the language of each bequest may be examined and it will be observed that whether the bequest is absolute or qualified the trustee was either to pay over at once or separate it from the general estate and perform the duties set forth in each subdivision. The general estate, as defined in the last subdivision of paragraph 4, is that sum, 'after the legacies have all been paid, my house sold with the contents thereof and the balance of money added thereto.' 'Legacies' are here used and plainly refer to the twenty-three preceding bequests, since none of them were to form a part of this general estate. There was a possibility of one of these bequests lapsing into the fund, and for this contingency there was an express provision—subdivision A. It seems demonstrated that the subdivision in controversy is to be viewed as a distinct and separate provision. It follows, therefore, that it lacks not only a provision for a gift over, but language consistent with a trust. The words of gift in the first part clearly eliminate any connection with the trustee. It is hardly conceivable that the reference to missions was intended for the trustee, for it would be too awkward a use of language by one having a knowledge of a trust, as did the draftsman, so clearly indicated in several parts of the will. Why should a trustee be enjoined not to spend any portion of the principal fund? The direction as to missions refers to the legatee otherwise it is unintelligible. It is hardly probable that a trus-

tee was cautioned not to give away the fund to missions.  The
mere notion of a trust is sufficient to dispel such a thought.  A
trustee could not expend the principal for any purpose.  There-
fore, if he were trustee of this fund, the instruction not to be
given away to missions would be clearly superfluous.  The direc-
tion 'invested for her benefit' does not necessarily import a con-
tinuance of the trust.  There is one subject throughout this sub-
division, the fund of $10,000, of which it is first predicated, that
it shall be given to the legatee for her personal use.  It can only
reach her through the trustee who holds the estate.  Therefore,
the trustee is to give her this sum, and when he does so, his con-
nection with this legacy is at an end.  This is further evident
from the improbable situation already mentioned of coupling
the trustee with the second predicate, 'not to be given away.'

"If, therefore, a consideration of the preceding clauses indi-
cates an elimination of the trustee, it is not a consistent con-
struction that seeks again to read the trustee herein merely be-
cause an investment of the funds is contemplated, for there is
no mention of income, or its payment, or period during which
the fund shall be invested.  On the other hand, the absence of
an expression as to income or the period during which the fund
was to be invested, is in entire accord with the extinction of any
connection of the trustee since he had already been directed to
pay the sum to the legatee for her personal use.  At all events,
the expression as to the investment does not import a limitation
of the gift.  In *Casper* v. *Walker, 33 N. J. Eq. 35, 38*, there was
in dispute a paragraph of a will in the following language : 'I
give and bequeath unto by beloved wife, Clarissa C. Peterson,
the sum of $4,000.  The same to be put at interest in some safe
investment and secure to her during her natural life.'  Chan-
cellor Runyon, citing *Gulick* v. *Gulick, 27 N. J. Eq. 498*, and
other authorities, said : 'The gift of $4,000 to the testator's
wife is absolute in its terms.  It is not given over in any event,
either expressly or by implication.  The will, indeed, provides
that it shall be invested for and during her life, but that is
merely a provision as to the manner of its enjoyment by her
during her life; the gift of the fund is, nevertheless, absolute,
subject to the qualifying trust.'

*86 N. J. Eq.*          In re Wadskier.

"The trustee, of course, concedes the principle enunciated in *Gulick* v. *Gulick, supra,* that the gift of income of personalty, without limit as to time, is equivalent to a gift of the principal, but alleges, 'in the case at bar, there is a clear limitation and the rule does not apply.' As I have already shown, in an analysis of the provisions of the will, the claim of the trustee as to a limitation is unsupported.

"I am convinced that the testatrix had no intention to limit the bequest to her niece. Her thought would have been legally expressed by the use of the words 'I give.' Upon this point she was apparently overanxious to be certain, and this may explain the added words 'for her personal use.'

"However, there is no warrant for a construction of the will that is out of harmony with the text and a repudiation of the common and ordinary meaning of the language used. It is my opinion that the bequest to Elizabeth White, mentioned in subdivision F, paragraph 4, was absolute, and that by reason of her death, her legal representative, the petitioner, is entitled to receive this sum from the trustee."

From the decree entered in the orphans court, upon the basis of that opinion, the present appellants appealed to the prerogative court, and that court, fully concurring in the views expressed in the opinion of Judge Boyle, decreed "that the decree of the orphans court be affirmed, and that the appeal of the appellant be dismissed." The latter part of this mandate is evidently due to inadvertence on the part of the draftsman of the decree.

We concur in the view of the prerogative court that the decree of the orphans court should be affirmed, and it will be so ordered. We base our conclusion upon the views expressed in the opinion delivered by Judge Boyle in the orphans court.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—15.

*For reversal*—None.