This is a bill for the construction of the will of Thomas Smith, late of Newark, in this state. It is a long and elaborate document, and, as it is set up in full in the pleadings, I will only quote such parts of it as are essential in disposing of the case. The facts as agreed to by stipulation between counsel are as follows:
"It is hereby stipulated and agreed by and between the parties hereto, for the purposes of this suit only, that the facts relevant thereto are as follows: *Page 540 
"1. Thomas Smith died February 13th, 1903, leaving a will admitted to probate by the surrogate of Essex county on February 25th, 1903, and that Fidelity Trust Company therein named as executor and trustee, and now known as Fidelity Union Trust Company, the complainant in this action, duly qualified and is still acting as trustee thereunder.
"2. Annexed hereto is a copy of the last will and testament of said Thomas Smith, deceased.
"3. That decedent died possessed of personal property and seized of real estate of great value, and that of the personal property there remains in the hands of the trustee the sum of twelve hundred and eighty-five dollars [$1,285], and there is in the hands of said trustee proceeds of the sale of real estate the sum of three hundred and ninety-five thousand dollars [$395,000].
"4. Thomas Smith left no child or children or issue of any deceased child or children him surviving.
"5. He was survived by his widow, Amanda Smith, and by his sister Ellen, wife of William Harpell, but his sisters Elizabeth Thompson and Emma Stephens predeceased him.
"6. Ellen Harpell, sister of deceased, died on September 17th, 1917, and a widow, Amanda Smith, died on February 3d 1924.
"7. By the ninth paragraph of said will the executor and trustee is directed to divide the proceeds of the sale of real estate into twelve equal parts, and to pay two parts thereof [less the sum of two thousand dollars, $2,000] to the child or children of decedent's sister Elizabeth; the said Elizabeth left one child, May Green;
"Two parts thereof to the child or children of his sister Ellen; in the said bill it is alleged that Ellen died without child or issue surviving, but, in fact, the said Elizabeth Harpell left her surviving one child, William Harpell, Jr., who resides in the State of Illinois, and is of full age, and we consent to the amendment of the bill filed in this cause in accordance with the facts and to the entry of an appearance on behalf of said William Harpell, Jr., by a solicitor duly authorized thereto; *Page 541 
"Three parts thereof to the child or children of decedent's sister Emma. Emma, sister of the decedent, left the following children: Nellie S. Cass, Bessie J.S. Hook, William T. Stephens, Emmabelle Stephens, Frederick B. Stephens, Joseph W. Stephens;
"Two parts thereof to the child or children of decedent's sister Amelia. Amelia, sister of the decedent, left the following children: Emma H. Pike, Clare Hook, Grace H. Dickson;
"Two parts thereof to Cora and Charles [or the survivor of them], children of decedent's deceased brother Joseph, share and share alike. Cora and Charles, children of decedent's deceased brother Joseph, survived the said Thomas Smith, but both of them died before the death of the survivor of the life tenants, Cora having died November 14th, 1911, leaving two children, Jane Laraway and Irma Laraway Dunn; Charles, her brother, died March 27th, 1919, leaving no issue, but a widow, Mary L. Smith, who is the administratrix of his estate;
"One part thereof to Carrie [wife of Daniel Bryant] and Imogene and Ida, children of decedent's deceased sister Jane, share and share alike, and in case of the death of either the said Carrie, Imogene or Ida, her lawful issue, if any, shall take the parent's share, and, if there is no issue, then the survivors or survivor of them, Carrie, Imogene and Ida, to take the deceased beneficiary's share. Carrie Bryant, now Carrie Stalnaker, is still alive; Imogene died November 21st, 1914, leaving two children, James A. Blake and Edith Blake Snobble; the said James A. Blake died, unmarried, without issue and intestate, May 4th, 1918, and the daughter is still alive. Ida, the remaining daughter of testator's deceased sister Jane, died April 26th, 1921, leaving no issue surviving;
"Amanda Smith, widow of testator, left a will of which Mechanics Bank of New Haven is the executor.
"8. That all of the parties to said suit are of full age.
"The life tenants are now all dead."
Mr. Smith died possessed of personal property of moderate amount but seized of real estate of great value. In the *Page 542 
seventh clause of the will, after providing several life estates, he directs "upon the death of the last survivor of them [life tenants], or as soon thereafter as to my executor may seem wise, considering the conditions of the real estate market, and the reasonable advantage to my estate by withholding the sale thereof for a reasonable time to sell said real estate." This direction to sell converted the proceeds derived from the sale into personal property for the purposes of the will.
In Dutton v. Pugh, 45 N.J. Eq. 426, the court held: "The direction to the executors to sell the residue of the estate is positive. They are allowed full discretion as to the manner of sale and are not limited as to the time of making it. Under such circumstances the land must be considered as converted into money from the death of the testator." However, it is only a conversion for the purposes of the will. Moore v. Robbins, 53 N.J. Eq. 137.
The first question that arises is what disposition shall be made of this residuary personal estate. The sixth clause says: "It is my will that my beloved wife, Amanda, shall not receive any part of the principal of my personal estate, but shall have the interest of one-third thereof during her lifetime." The testator proceeds to "recommend" to his wife that she accept this one-third of the income during her lifetime in lieu of dower. She did accept it and continued to receive it until her death. The seventh clause gives the real estate to the executor with full power of control, and directions as to the disposition of the income, among certain beneficiaries named. The thirteenth clause says:
"In case there should be a residuary personal estate [as there is], and I should die without leaving lawful issue [as he did], then I give the whole of said personal residuary estate to the beneficiaries, to whom I have bequeathed the net income of my real estate in the proportion in which the income is directed to be divided." c.
It is claimed that, as some of the income is directed to be paid to the wife under the sixth clause, her estate should now receive a proportionate part of the residue. I cannot agree with this contention. A careful reading of the whole *Page 543 
will leads me to the conclusion that Mr. Smith intended to provide for his wife in ample fashion as long as she lived, and then, when she died, if he predeceased her without issue, the residuary estate should go to his blood relatives. The sixth clause stands, as it were, alone. It clearly and explicitly holds that the wife shall not receive any of the principal; and, while it recognizes her legal right to an assignment of dower, he asks her to accept this life income in lieu thereof, with the evident intention of keeping the corpus intact for ultimate distribution at her death to his relatives. She acceded to his desire, and as long as she lived remained content with income only. I believe that the words of the thirteenth clause were intended to mean that the distribution of corpus was to be made in accordance with the terms of the seventh clause. The sixth clause is a full and complete provision for the wife, and the seventh distributes the remaining income after she is cared for. In other words, the thirteenth clause refers only to those mentioned in the seventh clause, and does not refer to the sixth clause, which expressly excludes the wife.
I have not overlooked the ninth clause. This, it appears to me, refers to a possible residuum consisting of real estate. But, as I view it, all the real estate, for the purposes of the will, was converted into personalty. Therefore, the thirteenth clause, referring back, as I have said, to the seventh clause, applies in the distribution, and the ninth clause need not be considered. The ninth clause clearly refers to real estate; the thirteenth just as clearly mentions personalty. This interpretation, it seems to me, carries out the testator's intention and explains the will as drawn, without altering its wording or declaring a partial intestacy.
The second question is, What shall be done with the share of the proceeds of the sale of real estate given to Cora and Charles? The reason for this is that Cora and Charles both survived the testator, and both died before the last life tenant. Charles survived Cora, who left two daughters, but died without issue, leaving a widow. Charles' widow claims the entire estate. Another claim is that the entire share lapsed and that *Page 544 
the heirs should divide it. Still another contention is that the widow's estate gets the entire share, under the intestacy laws, as sole next of kin. The final insistence is that the widow receives one-half and the next of kin the other half.
Courts have always endeavored to so construe a will as to avoid intestacy. It is unnecessary to cite authorities for this proposition. They are numerous and well known.
The widow's contention is untenable, I think, because, as I said above, the conversion into personalty is only for the purpose of the will, and, should these purposes fail, the share must be divided as realty among the heirs-at-law, and would not go to her as next of kin.
This question, I think, can be easily solved, in view of what I have heretofore said. Having found that the thirteenth section should be construed in connection with the seventh section, and the residuary estate divided in the proportion in which said income is directed to be divided (that is, as in clause seven), we must look to the wording of clause seven. It gives of the income "two shares thereof to be paid to Cora and Charles [the children of my deceased brother Joseph] in equal parts." Applying this language to the residuum, it gives two shares thereof to Cora and Charles in equal parts. There are no qualifying words whatever. Therefore, it is quite plain that Cora and Charles each had a vested remainder, and, hence, Cora's children take one moiety and the other goes to the administratrix of Charles.
The last question is, What becomes of the share of Ida in the proceeds of the sale of the real estate, she having died without issue? Carrie still lives; Imogene died leaving issue; Ida died without issue. Both Imogene and Ida survived the testator. For the solution of this question we must look, as we have done as to the second question, to the thirteenth section as construed by the seventh section. The seventh clause says: "One share to be paid to Carrie [wife of Daniel Bryant] and Imogene and Ida [daughters of my deceased sister Jane] in equal parts." Applying this language, as we have done in the question relating to Carrie and Charles to the residue, it gives one share to Carrie, Imogene and Ida *Page 545 
in equal parts. There are no qualifying words whatever. Therefore, these three sisters each had a vested remainder. So, Carrie takes one-third of this share, Imogene's issue one-third, and Ida's one-third is to be divided between Carrie and Imogene's issue, if Ida died intestate. If she left a will, then it, of course, passes as directed by said will.
I will advise a decree according to the above conclusions.