This bill is filed for the construction of the will of Charles Danforth, who died a resident of Paterson, Passaic county, New Jersey, in March, 1876. His will was probated by the surrogate of Passaic county on April 3d 1876, and letters testamentary were issued to the executors named therein. On March 21st, 1912, the Paterson Safe Deposit and Trust Company was appointed substituted-trustee under said will, and later consolidated with the Paterson National Bank of Paterson, New Jersey, which company is now acting as substituted-trustee under said will.
By his will Charles Danforth provided, among other things, as follows:
"Item. I give and bequeath to my daughter, Emily Danforth, the sum of one hundred thousand dollars."
That is on the next to the last item, on page 2 of the copy of the will annexed to the bill of complaint.
"Item. I do hereby nominate and appoint my wife, Mary Danforth, and my sons-in-law, William Ryle, Junior, and Orson Barnes, executors of this, my last will and testament. I charge my executors to execute all these bequests as a sacred trust. I charge them to see that my dear unfortunate daughter, Emily Danforth, is provided with everything to make her comfortable or that she is capable of enjoying; they are to hold her legacy in registered government bonds and in case Providence should restore her to reason, after two years of sanity the bonds are to be transferred to her; the interest arising from Emily's legacy is to be appropriated to her support, and the surplus, if any, to be invested for her benefit."
This is the last item set forth at the bottom of page 5 of the copy of the will annexed to the bill of complaint.
Emily Danforth has been a patient at Bloomingdale Hospital for Mental Diseases at White Plains, New York, since February 15th, 1864, and is at present an inmate therein. She went there twelve years prior to the death of her father. The corpus of the legacy to Emily held in trust by the substituted-trustee *Page 423 
amounted to $431,962.31 on April 14th, 1926, the date of the last accounting.
The trust is not yet terminated. Emily Danforth never married and has no brothers, sisters, father, mother or brothers or sisters of father or mother of the whole or half-blood. She has no children or any descendants of deceased children. She is eighty-seven years of age.
Complainant is a great-granddaughter of Charles Danforth, deceased, and has filed this bill to have his will construed so that it may be determined whether or not the legacy to Emily is an absolute gift to her or a gift in trust contingent upon the recovery of her sanity for a duration of two years, and to determine the rights of the heirs and next-of-kin of the said Charles Danforth and Emily Danforth to said fund. The Paterson National Bank of Paterson, New Jersey, substituted-trustee, has joined in the prayer of the bill for a construction of the will at this time, and for a decree settling the rights to said fund.
There were two prior clauses identical in amount and language, by each of which $100,000 was given to Matilda Taggart and Mary E. Ryle, the testator's other two surviving daughters.
There is no dispute as to the facts in this case, and the question devolves itself into one of law alone on the specific point as to whether or not the original legacy to Emily Danforth became vested in her at her father's death.
The original executors and trustees, William Pennington and Mary E. Ryle, took upon themselves the burden of the estate and departed this life with the estate still unadministered.
Emily Danforth has been maintained suitably to her condition in life.
The contention of the complainant is, that in case Providence should restore Emily to reason, after two years of sanity, the executors were to transfer to her the principal sum of $100,000 in government bonds, and that in case Providence did not restore her to reason the interest on the $100,000 was to be appropriated to her support and the surplus, if any, invested for her benefit. In other words, that the intention *Page 424 
of the testator was, that the gift of principal and interest as well, was conditioned on the daughter Emily's sanity. That the gift of income was not unlimited as to time; that it was limited to the contingency of her recovery of her sanity, in which case the principal of the fund would be transferred to her, provided the sanity continued for two years. That his scheme was that she should be taken care of while she was insane, and that she should be placed upon the same basis as his other daughters if she demonstrates her sanity.
The decedent executed his will about April 26th, 1867. After that he made various codicils thereto, the last of which is dated August 20th, 1875. He died in March, 1876. Emily Danforth was confined to Bloomingdale Hospital on February 15th, 1864, over three years prior to the execution of his will and for over twelve years before he died. He never changed the provisions of the will as to her. When he made his will he knew that she was insane and had been for over three years, and for eleven years when he made the last codicil.
Defendants contend that if the first "item," supra, stood alone there could be no question but that Emily Danforth got the absolute interest. The language used by the testator gave the whole beneficial interest of $100,000 to Emily Danforth, and the sole question is whether anything in the second "item" cuts down that undoubted absolute gift to a mere life estate.
I am satisfied that the intention of the testator was to give the entire beneficial interest to Emily Danforth.
If the first "item" had stood alone it would have been necessary for a guardian to be appointed. The testator, however, provided himself for the management of the fund by trustees, and it has been held by trustees for over fifty years.
It seems to me that the true construction of this will is, that it was the testator's intention to treat his three surviving daughers on an absolute equality, except as to the necessities of the case, due to Emily's insanity.
A careful perusal of the will has satisfied me that Emily Danforth has not a mere life estate, but has the full beneficial interest, subject only to the trust which is limited to its express words, to hold and manage the corpus during her insanity, *Page 425 
or until she shall have been sane for two years, or shall have died before two years, after having recovered her sanity or while still insane. Casper v. Walker, 33 N.J. Eq. 30; Woodward v.Woodward, 16 N.J. Eq. 83; Stewart v. Stewart, 61 N.J. Eq. 25;Lippincott v. Pancoast, 47 N.J. Eq. 21; Gulick v. Gulick,27 N.J. Eq. 498; Kouvalinka v. Geibel, 40 N.J. Eq. 443; In reWadskier, 86 N.J. Eq. 259; Adamson v. Armitage, 19 Ves. Jr.416; Johnson v. Haldane, 95 N.J. Eq. 404; Hicks v. Hicks,99 N.J. Eq. 92; In re Smith, 95 N.J. Eq. 631; Fidelity Union TrustCo. v. Green, 98 N.J. Eq. 538; Tyndale v. McLaughlin, 84 N.J. Eq. 652; Leigh v. Savidge, 14 N.J. Eq. 124; Yawger v. Yawger,37 N.J. Eq. 216; Carter v. Gray, 58 N.J. Eq. 411; Peer v.Jenkins, 102 N.J. Eq. 235.
I will advise a decree for the defendants in accordance with the views herein expressed.