22 N.J. Super. 469 (1952)
92 A.2d 62
FREDERIC R. PETERSON, ADMINISTRATOR C.T.A. OF THE ESTATE OF GEORGE T. WELLS, DECEASED, APPELLANT,
v.
AARON K. NEELD, DEPUTY DIRECTOR OF TAXATION, DEPARTMENT OF TREASURY, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1952.
Decided November 5, 1952.
*470 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Ralph S. Mason argued the cause for the appellant (Mr. Gordon D. Griffin, on the brief).
Mr. William A. Moore, Deputy Attorney-General, argued the cause for the respondent (Mr. Theodore D. Parsons, Attorney-General, attorney).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
Frederic R. Peterson, administrator c.t.a. of the estate of George T. Wells, deceased, late of Mercer County, New Jersey, appeals from an assessment of transfer inheritance tax levied by the Division of Taxation, Department of the Treasury, State of New Jersey (hereinafter referred to as the "Tax Department"), against the decedent's estate, insofar as it included therein a one-half interest in the remainder of the estate of Ephraim S. Wells, deceased.
*471 Under the will of decedent's father, Ephraim S. Wells, who died in 1913, his two sons, William Henry Wells and George Titus Wells were named as executors and trustees. The will created a trust for the benefit of several named beneficiaries and provided for the payment to them of designated sums of income. The trust was terminable upon the death of the survivor of a class or terminable ten years (i.e., March 9, 1923) after the testator's death by the trustees upon their making provision for the payments to the life beneficiaries as recited in the will. In the event that the trust was so terminated, the corpus of the trust was payable to the settlor's two sons, and if the trust should continue for its entire period, then it was provided that:
"* * * at the termination of the entire trust by the death of the survivor of the class of persons above named, the trustees shall convey and deliver the whole of the trust property to the said William Henry Wells and George Titus Wells, absolutely, as tenants in common, in equal shares, or to their respective heirs, devisees, executors, administrators or assigns, the said William Henry Wells and George Titus Wells hereby being given the power and privilege of assigning, devising or bequeathing their respective shares in the trust estate, such assignment, devise or bequest to take effect upon distribution, by the trustees and not upon the death of William Henry Wells or George Titus Wells or either of them occurring before such distribution."
William Henry Wells predeceased George T. Wells, the decedent herein, who died on February 7, 1950. At the death of George T. Wells the trust had not been terminated under the aforementioned trustees' option. The corpus of the trust amounted to approximately $150,000. In December, 1951 (subsequent to the death of George Wells) the entire trust actually terminated and the amounts payable to the surviving members of the class set up in paragraph 4-R of Ephraim S. Wells' will were provided for by the purchase of annuity policies.
The Tax Department determined that the testamentary trust created vested interests in William Henry Wells and George Titus Wells, the effect of which made an additional asset in George T. Wells' estate of his one-half interest *472 therein ($75,339.05), and when bequeathed by him to his widow it thereupon became subject to transfer inheritance tax assessment.
The appellant contends that George T. Wells' interest in the trust fund was not vested and even if vested, was subject to defeasance upon the happening of certain contingencies, i.e., failure to terminate and distribute the corpus during the life of George T. Wells, which contingency occurred, divesting George T. Wells of any and all interest in the said trust fund. He argues that, in effect, the trust created a gift in the disjunctive "to George T. Wells, or his heirs" and that under the circumstances George, the primary taker, having died prior to the date of the termination and distribution, the substitutionary gift became effective, "to his heirs"; that, therefore, the gift to the primary taker was contingent and not vested and defeated by the occurrence of the contingency; that provision for the naming of successor trustees and the security to be posted by them to be enforceable by the "residuary legatees or devisees" of the trust indicates that the settlor had in mind alternate or substituted legatees in the event of the death of his trustee sons and, further, that the portion of the trust instrument quoted above indicates that the settlor envisioned a contingent or defeasible interest in his sons coupled with the power of appointment upon the happening of the contingency; that George T. Wells was the beneficiary of a vested remainder subject to being divested by his death prior to the termination of the trust, and that his interest in the remainder of the trust is not taxable as a part of his estate in view of the fact that he predeceased the termination of the trust without having assigned, devised or bequeathed his interest as such; that the bequest of decedent's entire estate to his widow was not an exercise of such control over the trust fund sufficient to have vested it in decedent.
The Tax Department contends that the gift to George T. Wells, as one of the remaindermen of the estate of Ephraim S. Wells, vested since he survived the testator and that the *473 same was not subject to divestiture upon his death prior to the date of death of the life annuitants; that there was no uncertainty as to the gift except as to the time of actual enjoyment thereof; that the principal object which the decedent intended to accomplish in so formulating the provisions of his last will and testament, and particularly the trust estate, was the preservation of his business so that his incompetent son, Edgar Stockton Wells, if and when he should recover his sanity, might participate therein; that Ephraim S. Wells expressly postponed any alienation of his business enterprise or any cessation thereof, for a period of ten years succeeding the date of his death and provided a limitation period of eight years during which the business was to be preserved so that Edgar Stockton Wells would be afforded an opportunity for regaining his sanity and a further limitation period of two years was provided during which his recovery was to endure; that these periods were calculated to coincide with the minimum time-period during which the trust, composed of the decedent's business was to be preserved; that, during the continuation of the trust, the trustees, if the decedent's sons or one of them occupied that office, were permitted to withdraw from the business such sum as they or the survivor of them decided to withdraw; that the sole restraint placed upon the sons of Ephraim S. Wells was that they should preserve the decedent's business during the ten-year limitation period, and after the expiration of that time should make provision for the continuation of the payments provided for the lifetime of those persons named in Paragraph 4-R; that after 1923, the right to actual enjoyment was within the absolute power of the trustees-beneficiaries in that they could terminate the trust and distribute the corpus upon providing for certain designated annuities; that the language of the will, giving them power of assignment of their interest, implied absolute ownership thereof, and that the transfer of decedent's interest therein to his widow, under his will devising his entire estate to his widow, was a taxable transfer.
*474 Essentially, the question for our determination is the construction of the language of the trust so created and whether the bequest to George T. Wells was a vested or contingent interest therein.
A contingent estate, interest or right, has been defined as "An estate, interest or right which depends for its effect upon an event which may or may not happen; as an estate limited to a person not in esse; or not yet born." Black's Law Dictionary (4th ed.), p. 392. As opposed thereto, a vested interest is defined as "a present right or title to a thing which carries with it an existing right of alienation, even though the right to possession or enjoyment may be postponed to some uncertain time in the future, as distinguished from a future right, which may never materialize or ripen into title, and it matters not how long or for what length of time the future possession or right to enjoyment may be postponed, if the present right exists to alienate and pass title. * * * A future interest not dependent on an uncertain period or event, or a fixed present right of future enjoyment." Ibid. p. 1735. And a vested remainder as "An estate by which a present interest passes to the party, though to be enjoyed in futuro, and by which the estate is invariably fixed to remain to a determinate person after the particular estate has been spent. * * * One limited to a certain person at a certain time or upon the happening of a necessary event." Ibid. p. 1457.
"The primary division of remainders is into (a) vested, and (b) contingent. A vested remainder is one in which there is a present fixed right to future enjoyment of the property. A familiar illustration is an estate to X for life, remainder to Y, who is a living person. Here, while Y cannot possess and enjoy the land until after the death of X, yet his right to such future enjoyment is not affected by any contingency or uncertainty. The interest is unquestionably his. Only his possession of the property in which the interest exists is postponed until the termination of the particular precedent estate.
A contingent remainder is one in which either the person to take it is not in being or not ascertained, or the event upon which it is to be enjoyed is uncertain, or both; and so the right to the future enjoyment *475 of the property is not fixed. Simple illustrations are an estate to X for life, remainder to his unborn son or to such of his children as may be living at the time of his death; an estate to X for ten years, remainder to Y and his heirs forever if he marries Z. A contingent estate is frequently defined as an uncertain right to future enjoyment." Kahn v. Rockhill, 132 N.J. Eq. 188, 190, 191 (Ch. 1942).
In the work of Clapp on Wills and Administration, 6 New Jersey Practice, sec. 298, pp. 80, 81, the author states:
"The question whether or not an interest is vested is always to be determined by the expressions of the will; however, in the usual case the testator does not express himself upon the matter except in the most casual and, probably, thoughtless fashion. In order to resolve these doubts which the testator has left in his will, the law has settled itself into certain rules or presumptions; the moral strength, such as it is, of these presumptive rules lies in the doctrine under which legacies and devises are construed to be vested and not contingent, or, if contingent, are held to vest at the first opportunity, unless such a construction would be clearly inconsistent with the testator's intention."
In Neilson v. Bishop, 45 N.J. Eq. 473 (Ch. 1889), Vice-Chancellor Van Fleet stated, at p. 475:
"The general policy of the law and the rules of interpretation require that legacies in all cases, unless clearly inconsistent with the intention of the testator, should be held to be vested rather than contingent. Van Dyke v. Vanderpool, 1 McCart. 198, 207."
The language employed by the settlor in the instant case is clear. He did not establish any life estates, but merely directed his executor to pay certain amounts to specified beneficiaries. The will provided that the trust was terminable ten years after the settlor's death by the trustees, upon their making provision for the payment of income to annuitants specified. At that time and under those circumstances, the corpus of the trust became payable to the settlor's two named sons. If the trust was not terminated by the action of the trustees as stated above, it was terminated automatically under the quoted portion of the trust set forth *476 above and the corpus payable in equal one-half portions to the decedent's named sons, "or to their respective heirs, devisees, executors, administrators or assigns."
We find no words of contingency in the provision establishing the gift of the remainder to William Henry Wells and George T. Wells. We are of the opinion that it was absolute and vested. Aside from the initial ten year period following the settlor's death, the uncertainty as to time for enjoyment by the devisees was within their control.
We are of the opinion that appellant's contention that the use of the disjunctive "or," in the words of the gift amounted to a substitutionary gift in the event that the trust was not terminated and distributed in the lifetime of George T. Wells, is unmeritorious. It was a present gift and the sons, as beneficiaries, were given the absolute power of disposition of their respective interests therein regardless of the time or method of exercise thereof. In other words, it was a complete and vested gift to take effect in possession at any time subsequent to March 9, 1923.
Under comparable circumstances, in the case of Lippincott v. Pancoast, 47 N.J. Eq. 21 (Ch. 1890), wherein the construction of the phrase "or his heirs" was passed upon, it was stated, at p. 27:
"* * * William's right and interest in the principal, however, was vested. At his death the purpose of the trust being fulfilled, his personal representative, executor or administrator, became entitled to demand and have the funds.
I think that the words `or his heirs,' in the will of David C. Pancoast, were used simply to indicate that William was to have the entire and absolute interest in the fund referred to."
Our courts have, when considered necessary to effect the intent of the testator, construed or read "or" as meaning "and." Cody v. Bunn, 46 N.J. Eq. 131 (Ch. 1889); cf. Nat. State Bank of Newark v. Morrison, 7 N.J. Super. 333, 342 (Ch. 1949); Lawes v. Lynch, 7 N.J. Super. 584, 589, 590 (Ch. Div. 1950), affirmed 6 N.J. 1, 7 (1950). Such *477 a construction would, in our opinion, be consistent with the testator's intent in the matter sub judice.
It is a principle so generally recognized as to require no citation, that in construing a will it is the court's function to arrive at the testator's intention as may be disclosed by the instrument as a whole and where the testamentary purpose is defined in clear and unequivocal terms, there is no room for construction. In re Fisler, 133 N.J. Eq. 421 (E. & A. 1943). In the matter sub judice, it seems clear that the language in question is opposed to the idea of the peril of divestiture and that the testator's intent was one of limitation of the gift to his named sons and not an expression of substitutionary gift to others in event of the sons' failure to effect possession or enjoyment thereof within a limited time.
Accordingly, the assessment is affirmed.