The Chancellor.
The question in controversy arises upon the tenth item, or clause, in the will of Hope Cow *165 perthwait, late of the county of Burlington, deceased. The clause of the will is as follows :
“Fourth. I give and bequeath unto my son Wallace, and my grandson, Aquilla S. Ridgway, and to the survivors of them, and to the executors, administrators, and assigns of such survivor, the remaining equal fourth part of the rest, residue, and remainder of my personal estate, whatsoever and wheresoever, upon and for the trusts, interests, and purposes, and with and subject to the powers and proviso herein after mentioned and expressed of and concerning the same, that is to say upon trust, that they, the said Wallace Lippincott and Aquilla S. Ridgway, and the survivor of them, and the executor’s, administrators, and assigns of such survivor, shall place the said last mentioned one-fourth part of my personal estate at interest upon good and sufficient security, and shall pay all the interest that shall arise thereon yearly, as it shall become due, to my daughter, Hannah Lippincott, so long as she shall live. And also in trust, to pay unto my said daughter, Hannah Lippincott, so much of the principal money of the said last mentioned fourth part as my said daughter Hannah shall from time to time, by writing under her hand, and attested by two credible witnesses, require of the said trustees. But in the event that my daughter Hannah shall marry, then it is my will that the interest and principal money, above directed to be paid to her be paid into her own hands, for her sole and separate use, and her receipt, notwithstanding her coverture, shall be a sufficient discharge to the said trustees therefor. 11
“ My intent being that the same shall in no wise be subject to the contracts, debts, or control of any husband she may marry.
“And from and immediately after the decease of my said daughter Hannah, in case she shall marry, and have children living at her death, or descendants of such children, then it is my will that what shall remain undisposed *166 of, of the said last mentioned fourth part of the residue of my personal estate, with its accumulated interest, shall belong to, and vest in the children of my said daughter Hannah, equally between them, if more than one, to be paid to them as they respectively attain the age of twenty-one years. But if any child of my said daughter Hannah shall die before bearing issue living at the time of the death of the said Hannah, then such issue shall stand in the place of their deceased parent, and take that parent’s share, and if more than one, equally between them.
“ But in case my said daughter Hannah shall die without any child, or descendants of such child, living at her death, then it is my will that the said trustees do pay such part of the last mentioned fourth of the residue of my personal estate as may remain undisposed of at the time of the death of my said daughter Hannah, with its accumulated interest, unto such of the brothers and sisters of my said daughter Hannah, and their children, and in such proportions as my said daughter Hannah shall, by her last will and testament, or writing in nature thereof, signed by her hand, and attested by two credible witnesses, direct and appoint: my will being that my said daughter Hannah shall in such case have power to dispose of the same among her brothers and sisters, and their children, in such proportions as she may think fit, but to no other person or persons whatsoever. And in case my said daughter Hannah shall die not leaving any child at her death, or descendant of such child, and without, having made such appointment and disposition of what shall then remain undisposed of, of the said last mentioned fourth part of the residue of my personal estate as she is above empowered to make, then it is my will, and I do hereby direct the said trustees to pay the same unto the brothers and sisters of my said daughter Hannah in equal proportions, the share of such of the sisters, however, as shall then be married, to be paid to their trustee for their separate use, free from their husbands’ control, the chil *167 dren of any deceased brother or sister to stand in the place of his, her, or their parent, and take that parent’s share equally between them, if more than one.”
The one-fourth part of the residue of the personal estate of the testatrix amounted to the sum of nine thousand two hundred and eighty-nine dollars. This sum, together with considerable interest which had then accrued thereon, the executors paid over to Aquilla S. Eidgway, as surviving trustee, who held the same during the lifetime of Hannah Lippincott. Hannah Lippincott died in the year 1849. She made no disposition of the trust fund during her lifetime. She drew from the hands of the trustee a part of the interest only. It is alleged that, at the time of her death, the principal money, with the accumulated interest in the hands of the trustee, amounted to the sum of twenty-five thousand dollars. Hannah Lippincott left a will, which had been subscribed in the presence of two witnesses. By her will, after reciting therein, in part, the bequest of Hope ■ Cowperthwait of the undivided fourth part of her personal estate in the said trust, and that the whole of the said one-fourth part of the said residue then remained undisposed of, and had been largely increased by interest, and remained in the hands of Aquilla S. Eidgway, as surviving trustee, did, “ of and concerning the said one-fourth of said residue, and accumulated interest thereon, give, order, direct, limit, and appoint, that the said Aquilla S. Eidgway, trustee as aforesaid, should pay to Eebecca Zilly, out of said residue and accumulated interest, the sum of one hundred dollars, and should retain all the residue thereof to and for his own use.”
Eebecca Zilly, one of the defendants, is the only surviving sister of Hannah Lippincott. The complainants, Mary S. Haines, "Wallace Lippincott, and Sarah Ann Pan-coast, are the only children of Wallace Lippincott, deceased. Aquilla S. Eidgway, the defendant, is the only child of Martha Woolston, deceased, who was a sister of *168 •Hannah Lippincott. The complainants are entitled to one-third part of the fund in dispute, if Hannah Lippincott has failed to execute the power conferred upon her by the will of Hope Cowperthwait. These facts are stated by the bill. They are to be assumed as true, upon the decision of the case upon bill and demurrer.
But a single question is involved, whether the will of Hope Cowperthwait gave to Hannah Lippincott the power of exclusive appointment, by last will, as to her brothers and sisters, and their children ? The donee’s construction of the power was, that it did; and with that view, she has attempted to execute it. At her decease, she left one sister her surviving, two nieces, and two nephews. To the two nieces, and to one of the nephews, she appointed no part of the fond. She has exercised the appointment as an exclusive one. The complainants contend, that all the objects of the appointment referred to are entitled, by the power of appointment, to some substantial portion of the fond, and that not having received it, there is a defective execution of the power, and that the fund must be distributed as Hope Cowperthwait directed it should be in the event of Hannah Lippincott’s dying not leaving any child, and without having made such appointment and disposition of the fund by last will as she was empowered to do.
The intention of the donor of the power must be carried out. As there is nothing before the court from which that intention can be ascertained, except the seventh item or clause of the will, that must be our only guide in seeking for the intention. There are no technical rules to embarrass the court in giving a construction to this power. There are numerous authorities in the books where constructions have been given to powers of appointment veiy similar to the one before us. Most of them are collected in Sugden on Powers, § 5, 561. The difficulty in this case has arisen from the fact, that the donor, after creating a power free from ambiguity or doubt, proceeded herself to *169 declare what she intended by that power, and which intention was at variance with the power previously created by the natural and plain import of the language employed. In the first place, she directed her trustees to pay the fund “ unto such of the brothers and sisters of my daughter Hannah, and their children, and in such proportions as my said daughter Hannah shall, by her last will and testament, or writing in nature thereof, signed by her hand, and attested by two credible witnesses, direct and appoint.” If the will had stopped here, no difficulty could have arisen. It is manifest that a discretion is given to the donee, as to a selection between the objects named. The appointment was to be made unto “such” of the brothers and sisters, and their children, as she should direct and appoint. This language created an exclusive power of appointment. But it was said that the appointment was to be made to the objects named in “ such proportions” as the donee should direct and appoint, and that the words “ such proportions” could not be applicable, if only one of the objects named could be selected. But the phraseology must not be taken in detached parts. If the language had been “ unto such of the brothers and sisters of my daughter Hannah, and their children, in such proportions as she by last will shall direct,” her discretion would have extended to the proportions only. But the language being, to such of the brothers and sisters, &c., and in such proportions as she by last will shall direct,” the discretion of the donee is not limited to the proportions, but extends to the objects of the appointment also. In Wollen v. Tanner, 5 Ves. jun. 218, the language of the power was “ unto and amongst all such child or children of Susannah "Wollen (wife of Thomas Wollen the elder, and daughter of Elizabeth Winter,) in such parts, shares, and proportions, manner and form, as James Winter should, by any deed or deeds, &c., direct, appoint,” &c. Hot only the word all was urged as an argument against an exclusive appointment, but the words parts, shares, and *170 proportions. The Chancellor said, the fault of the plaintiffs’ argument is, that they stop at the word “ all.” They must go on, and finish the sentence; and then it is “ all such child or children as he shall appoint.”
It was further argued, that an exclusive appointment would not answer the language “unto such of mybrothei’s and sistersthat the language is imperative that a brother must have some of the fund and a sister some; and that if the donee could appoint exclusively to a brother, the intention of the donor would be defeated, because the “sisters,” as well as “brothers,” are included in the language used. But it is impossible to give this force and effect to the conjunction “and” without depriving the word “ such” of all pertinence in the sentence. In the case of Swift on the demise of Huntley and wife v. Gregson, 1 T. R. 482, under a power of appointing a real estate “ to the use of such child and children, and for such estate and estates and purposes as the husband should appoint,” and in default of appointment the estate was limited to the use of all and every the child and children of the marriage in fee, the word or was read for and, and an exclusive appointment was held to be good.
But in this case the donor has chosen to give her own interpretation to the language used, and has declared the construction to be put upon the power. This she had a right to do. Her language is, “my will being that my said daughter shall in such case have power to dispose of the same among her brothers and sisters, and their children, in such proportions as she may think fit, but to no other person or persons whatsoever.” It was argued, on behalf of the defendant, that this was not intended to qualify or limit the power of appointment previously conferred, but was meant only as a more emphatic designation of the objects to which the appointment was to be confined. But the language is too direct and unequivocal to admit of this construction. She used the word among her brothers and sisters, which is inconsistent with an exclusive ap *171 pointment, standing, as this word does, without any qualification of its natural import and signification. The position of the word “ such” in the sentence confines the discretion of the donee to the proportions. She in fact declares, that when she used the word such in the preceding sentence, she meant it to qualify “proportions,” and not the objects of the appointment. My opinion therefore is, that the power has not been properly executed, and that the brothers and sisters of Hannah Lippincott were, each and all of them, entitled to a portion of the trust fund under an execution of the power. Hannah Lippincott having failed to execute the power, the surviving trustee must pay the trust fund to the complainants and Rebecca Zilly in equal proportions, in conformity to the directions of the will of Hope Cowperthwait.
The demurrer must he overruled with costs.