FRANKLIN G. DUNHAM, JR.,

*v.*

WILLIAM C. ADAMS.

[Submitted July 14th, 1913. Decided October 9th, 1913.]

1. When a wife, after deserting her husband, commences suit against him on a contract made between them, she forfeits the right to that protection which equity casts about her by reason of the relationship of husband and wife, and, with respect to such suits, equity will regard her as if she were a *feme sole* from the date of the desertion in applying the doctrine of laches, or by analogy, the bar of the statute of limitations. The reasons which move equity to suspend the bar while the parties are living together as husband and wife do not exist in favor of the offending party after the desertion.

2. In a suit by the complainant, as assignee of the defendant's wife, to recover the amount of two loans which she had made to the defendant, the delay in instituting the suit on one claim for upwards of sixteen years after it became due, and on the other, for about fourteen years—which periods exceed the time allowed by the statute of limitations from eight to twelve years, respectively, considering that she had lived separate and apart from her husband twelve years before the claims were assigned and suit brought—constitutes such inexcusable laches that equity should not aid the plaintiff.

---

*Messrs. Carrick & Wortendyke,* for the plaintiff.

*Messrs. Smith, Mabon & Herr,* for the defendant.

GRIFFIN, V. C.

The plaintiff, as assignee of defendant's wife, began suit in the Hudson county circuit court to recover the amount of two loans which the wife says she made to the defendant, her husband, namely, $100, on December 20th, 1895, and $1,000 on October 8th, 1898, to evidence which the defendant delivered to his wife two papers as follows:

"EXHIBIT D. 2.

"I have agreed to lend one hundred dollars ($100) to W. C. Adams for 6 months at 3½ per cent. or for 1 year at 5 per cent.

"Dec. 20th, 1895.

"For one yr but willing to make it agreeable if a shorter term is required.

"W. C. ADAMS.

"I have not received it."

"EXHIBIT D. 3.

"WHEREAS, Ada Mary Adams has advanced to me the undersigned her husband the sum of one thousand dollars for the purpose of assisting me in the erection of certain houses now in course of erection on Mandeville avenue, Jersey City, N. J.

"AND WHEREAS said money is her own and separate estate, and for the purpose of securing to her the repayment of said amount.

"NOW THEREFORE this agreement witnesseth, that I William C. Adams, the undersigned and husband of said Ada Mary Adams, do hereby assign, transfer and set over unto the said Ada Mary Adams the rental of one 'whatever it may rent for of said houses to the extent of twenty-five dollars per month as and for the re-imbursement to her for said loan of one thousand dollars, until the same shall be fully paid and satisfied.

"IN WITNESS WHEREOF I have hereunto set my hand and seal this eighth day of October, eighteen hundred and ninety-eight.

"Witness,

"WM. C. ADAMS.    (Seal.)
"Oct. 10th."

(The interlined, underscored words are in pencil.)

The defendant and his wife lived together in Jersey City until the month of February, 1900, when she moved to England, taking with her their daughter. The defendant went with her to the steamer, and kissed her good-bye. His testimony indicates that she left against his wish. The defendant lived in Jersey City continuously from 1900 to date, during all of which

time the parties did not live together. The defendant commenced suit for divorce in this court on the ground of desertion, and a decree *nisi* has been entered in his favor.

On December 20th, 1912, the wife assigned her said claim to the plaintiff, who brought the suit at law above mentioned.

The complaint, in one count, sets forth the plaintiff's claim as to the $100 as follows:

"1. On or about December 20th, 1895, Ada Mary Adams, now of Aldbourne, Somers Park avenue, Malvern Link, Worcestershire, England, then residing in Jersey City, N. J., and then and now being the wife of William C. Adams, did loan to said William C. Adams one hundred dollars of her own separate estate, to be repaid in one year, with interest at five per cent. A copy of the agreement signed by the said William C. Adams is hereto annexed and marked Schedule A." (Exhibit D. 2.)

The second count sets forth that on or about October 8th, 1898, the said Ada Mary Adams loaned to her husband the further sum of $1,000, and took the agreement which is annexed to the declaration and marked Schedule B. (Exhibit D. 3).

It also sets forth that neither of the loans were repaid to said Ada Mary Adams up to December 20th, 1912, on which date she transferred the said claims to the plaintiff; that no part of the indebtedness has been paid to the said plaintiff, and that the plaintiff claims damages for $100 with interest, from December 20th, 1895, at the rate of five per cent. per annum, and the sum of $1,000 with interest, from October 8th, 1898, at the rate of six per cent. per annum.

The defendant, in his answer, denies the making of either agreement, and sets up failure of consideration, and denies that said loans were ever made, and that there is any money due. He also filed a counter claim, which was not pressed at the hearing.

The cause being at issue, upon the plaintiff suggesting to the court that the contract sued upon was between husband and wife, over which a law court had no jurisdiction, the cause was transferred to this court under the laws of 1912, chapter 233, page 417. The plaintiff's case is supported wholly by the deposition of the wife taken in England, and the Exhibits D. 2

and D. 3; and were it not for the long delay in asserting the right, her assignee would be entitled to recover. The written documents, Exhibits D. 2 and D. 3, the signatures of which are admitted to be his, with the testimony of the wife, overcome the testimony of the husband that the money was not paid. Schedule B (Exhibit D. 3), being the assignment of rents as security for the loan of $1,000, was prepared in the office of Mr. Puster. The wife says that it was delivered to her at their residence, and that she and her husband alone were present. The defendant says that he went with his wife to Mr. Puster's office and signed the paper there. He says he left it entirely with Mr. Puster to attend to and get the money, and that he never got any money on it. I think the wife is right when she says the paper was signed at their residence. The attestation clause bears date the 8th of October, 1898. The paper evidently was not signed on that day, because after the signature "W. C. Adams" is written the words "Oct. 10th," in the handwriting of the defendant, which signature and date are both written in green ink. It is unlikely that a lawyer would permit an instrument to be dated in that fashion—he would naturally change the date in the attestation clause to the true date; and it is also unlikely that he would permit a legal document to be signed with green ink.

If the paper was left with Mr. Puster to turn over to the wife upon the payment of the money, undoubtedly, if the money was paid to Mr. Puster, he disbursed it by paying the bills of the defendant directly, as it appears throughout the testimony of the defendant that at the time this paper was signed he was being pressed for money to complete his buildings, and that Mr. Puster was attending to his affairs.

If Mr. Puster was living, he, undoubtedly, could shed a great deal of light upon the transaction. He died in 1905.

On the foregoing facts the defendant insists that the laches of the wife has been such that she is not entitled to relief in this court; whereas, the plaintiff contends that, by reason of the fact that the relationship of husband and wife exists, the wife could not, in equity, be charged with laches, nor the bar of the statute of limitations be applied by analogy.

If the contracts sued upon were not between husband and wife, pleas of the statute of limitations would be complete bars, as more than six years elapsed since the debts accrued, and such a plea would also be a bar in equity (*Partridge* v. *Wells, 30 N. J. Eq. (3 Stew.) 176; affirmed, 31 N. J. Eq. (4 Stew.) 362*), as equity will follow the law in this respect, unless special circumstances take the case out of the rule. *Gray* v. *Gray, 39 N. J. Eq. (12 Stew.) 511; Yeomans* v. *Petty, 40 N. J. Eq. (13 Stew.) 495; Bennett* v. *Finnegan, 72 N. J. Eq. (2 Buch.) 155; Ten Broeck* v. *Jackson, 71 N. J. Eq. (1 Buck.) 582; S. C. on appeal, 73 N. J. Eq. (3 Buch.) 734; Givernaud* v. *Givernaud, 81 N. J. Eq. (11 Buch.) 66* (at *p. 77*).

The special circumstances relied upon in this case to toll this bar by analogy and excuse laches is the fact that the contracts are between husband and wife. No other reason is given, and no other excuse is offered for the failure to sue earlier. It is the settled law of this state that the wife cannot sue the husband at law, but may do so in equity; but because the law abhors disputes and litigation between them which would tend to disturb the marital relations, it in some cases excuses the failure to bring suit, at least during the continuance of such relation, and does not, by analogy, uphold the bar contained in the statute of limitations.

In this case the wife deserted her husband, and during the twelve years that elapsed from the date of the desertion down to the commencement of this suit, she displayed no intention of resuming matrimonial relations; on the contrary, her communications through counsel confirm the view that she intended permanently to live apart from him. These communications were addressed only to the adjustment of property rights and the freedom from annoyance from her husband with respect to herself, and the custody of her daughter and the payment for her tuition. There was nothing in the existing relations of the parties from the time she left her husband down to the commencement of this suit which could lead to the inference that she neglected to sue because of the relationship of husband and wife. There was no detriment that could flow to her from such suit. The parties stood at arm's length as fully as if they were unmarried.

When a wife, after deserting her husband, commences suit against him on a contract made between them, she forfeits the right to that protection which equity casts about her by reason of the relationship of husband and wife, and, with respect to such suits, equity will regard her as if she were a *feme sole* from the date of the desertion, in applying the doctrine of laches, or by analogy the bar of the statute of limitations. The reasons which move equity to suspend the bar while the parties are living together as husband and wife do not exist in favor of the offending party after the desertion. The claim of the plaintiff should, therefore, be held barred.

There is further reason why, under the circumstances of this case, the plaintiff should not be allowed to maintain this action, viz., in the years that have elapsed since the debt became due and her desertion, a number of witnesses upon whom the defendant might have relied to substantiate his defence have died, particularly Mr. Puster; and the facts in relation to the matter have become clouded in the mind of the defendant so that he is not as well able to defend as if the suit had been brought earlier. *Lutjen* v. *Lutjen, 64 N. J. Eq. (19 Dick.) 773* (at *pp. 783, 784*). What the particular period of time is within which this suit might properly have been commenced is unnecessary to determine. It is sufficient to say that the delay in instituting the suit on one claim for upwards of sixteen years after it became due, and on the other for about fourteen years—which periods exceed the time allowed by the statute of limitations from eight to twelve years, respectively, considering that she had lived separate and apart from her husband twelve years before the claims were assigned and suit brought—constitutes such inexcusable laches that equity should not aid the plaintiff. *Gray* v. *Gray, supra; Bennelt* v. *Finnegan, supra; Mealey* v. *Howard, 79 N. J. Eq. (9 Buch.) 93; Sebring* v. *Sebring, 43 N. J. Eq. (16 Stew.) 59; Ten Broeck* v. *Johnson, supra; Lutjen* v. *Lutjen, supra; Givernaud* v. *Givernaud, supra; Van Houten* v. *Van Winkle, 46 N. J. Eq. (1 Dick.) 380; 5 Pom. Eq. Jur. §§ 20, 21.*

I will advise a decree for the defendant.