The bill in this cause is filed for the appointment of a new trustee to execute and discharge the trusts created by a declaration of trust hereinafter referred to, and to ascertain and determine the true intent, meaning and construction of the said declaration of trust, and to determine whether the original power of appointment given to John K. Daly is extinguished or still survives.
Bridget Agnes Daly died May 1st, 1894, leaving her surviving as her only heirs-at-law her children, Mary Elizabeth Boylan, John K. Daly and Bridget Agnes Daly, and Thomas J. Daly, a son of James Daly, a deceased son. Bridget, the mother died seized of the tract of land in Jersey City, which is the subject-matter of the declaration of trust, leaving a last will and testament, in and by which she devised and bequeathed said tract of land to John K. Daly, and bequeathed to her insane daughter, Bridget Agnes, $1,400, and appointed Dennis Gallagher her guardian. John K. Daly, by his deed, dated October 25th, 1894, and recorded in liber 607 of deeds, page 584, conveyed the said premises to Dennis Gallagher for the consideration of $1,800; and Dennis Gallagher and his wife did, on the same day, by a declaration of trust, recorded in liber 607 of deeds, page 586, declare the trusts upon which the property was conveyed to him. The above consideration of $1,800 consisted of $1,300 which Dennis loaned as guardian of Bridget Agnes Daly, and $500 of his own.
The declaration of trust, after reciting the deed from John K. Daly to Gallagher for the premises in question, in consideration of one dollar paid by the said John K., did admit and declare that the said premises were conveyed to him, and *Page 587 
that he now holds and will continue to hold the same in trust only as follows:
"1. To secure the payment of the sum of one thousand three hundred dollars, invested by way of mortgage on said property moneys belonging to Bridget Agnes Daly, which I hold under the terms of the will of her mother, Bridget Daly, deceased, with interest on said sum from this date, at six per cent. per annum, payable semi-annually, the principal to be paid immediately upon the death of the said Bridget Agnes Daly.
"2. To secure the payment of the sum of five hundred dollars to myself, which sum is invested by me, by way of second mortgage on said property, with interest on said sum from this date at six per cent. per annum, payable semi-annually, the principal to be paid immediately upon the death of the said Bridget Agnes Daly."
The third paragraph provides that the net rents, issues and profits of said property, after paying interest on said two sums of $1,300 and $500, and the taxes, c., should be applied to the support and maintenance of the said Bridget Agnes Daly during her natural life.
Bridget Agnes, the daughter, died April 1st, 1904. The trust for her as to the net income thereupon fell in, and as she died intestate, the $1,300, with interest, should be paid to her administrator out of the proceeds of the sale of the lands.
The paragraph requiring construction is the fifth of said declaration of trust, which is as follows:
"5. Upon the death of the said Bridget Agnes Daly, to convey said property subject to said two investments, or [if the same shall have been sold] to pay the net proceeds thereof over and above said two investments, or assign the securities by which the same shall then be represented to such child or children of Mary Elizabeth Boylan, sister of the said John K. Daly, as he shall by instrument under his hand direct, or if he make no such declaration and shall die leaving a last will and testament, then to such child or children of the said Mary Elizabeth Boylan as he shall in said last will and testament have directed, and in case he shall die without such direction or without leaving a last will and testament, then to such child or children of the said Mary Elizabeth Boylan as I the said Dennis Gallagher shall direct, and in case I shall die without leaving such direction, then to all the children of the said Mary Elizabeth Boylan then surviving." *Page 588 
Under this clause the children of Mrs. Boylan took a contingent remainder during the life of Bridget Agnes, or until the death of Mr. Gallagher, if he died after the death of John K. Daly, in the lifetime of Bridget Agnes, with a vested remainder in those who were living at the date of her death, or at the date of the death of Mr. Gallagher as aforesaid, subject to one or more of said children being eliminated by the execution of the power.Coleman v. Seymour, 1 Ves. Sr. 209; 27 Full Eng. Reprint 987.
The power of appointment given to Gallagher might be exercised by an instrument in writing or by his will. Cueman v.Broadnax, 37 N.J. Law 508. Therefore, what is said herein with reference to the power of appointment by John K. Daly applies with equal force to the right to appoint by Gallagher.
Dennis Gallagher died October 14th, 1918, leaving a last will and testament, in which he did not attempt to exercise the power; and the parties have agreed that, as his estate has given up any claim to the $500 and interest, no accounting by his estate will be required. The parties interested are all of full age.
Under this fifth paragraph John K. Daly was given a power to appoint, either by an instrument under his hand or by his last will and testament, to such child or children of Mary Elizabeth Boylan as he might select, and if he failed to make such appointment then the power of appointment is given to the said Dennis Gallagher; and in case Dennis died without making the appointment, then to all of the children of said Mary Elizabeth Boylan then surviving. It is urged, on one side, that as Dennis Gallagher died without exercising the power to appoint, the power given to John K. Daly is at an end. I cannot agree with counsel in this construction. The primary power of appointment is given to John K. Daly, and the power is given to Dennis only in the event of John K. dying without appointing.
It is urged, however, by John K. Daly, that he did not know of the making of this declaration of trust until about a year after it was made, which was about the year 1895, *Page 589 
more than thirty-one years ago, and about twenty-three years before the death of Dennis Gallagher. During all that time he took no action; and now, when death has sealed the lips of Gallagher, who was most interested in sustaining the legality of the declaration of trust, it is too late for him to assert this claim. He is guilty of gross laches. Lutjen v. Lutjen, 64 N.J. Eq. 773; Dunham v. Adams, 82 N.J. Eq. 265, and cases cited (atp. 270).
In addition to this, the declaration of trust and the deed were both executed at the same time as part of the same transaction, and it is quite evident that the declaration of trust was drawn to carry out the desire of John K. Daly, for, otherwise, why should a deed be given instead of a mortgage? In the absence of the declaration of trust, upon the payment of the $1,800 the title to the property would revest in John K. Daly.
As the trust was in Dennis Gallagher, since deceased, upon his death it devolved upon his eldest son as trustee.
The question presented is, What is the true construction of the declaration of trust?
Chancellor Kent, in 4 Kent Com. 345, says: "The intention of the donor of the power is the great principle that governs in the construction of powers, and in furtherance of the object in view the courts will vary the form of executing the power, and, as the case may require, either enlarge a limited to a general power, or cut down a general power to a particular purpose." To the same effect is Wilson v. Troup, 2 Cow. 195 (200). See, also,Bristow v. Warde, 2 Ves. Jr. 336; 21 Eng. Rul. Cas. 356, note
(at p. 378); Jackson v. Veeder, 11 Johns. 169.
A question arises whether the donee of the power should exercise the appointment within a reasonable time and put the appointees in possession, or thereafter the right to appoint would be at an end? My conclusion is that John K. Daly should have exercised the power of appointment within a reasonable time after the death of Bridget Agnes Daly. The declaration of trust indicates that the objects of the donor's bounty were Bridget Agnes Daly, his insane sister, *Page 590 
and, after her death, the children of Mary Elizabeth Boylan. Upon the death of Bridget Agnes Daly the declaration of trust deals with two situations — one, where the property had not been sold, and the other where it had been; and reading this declaration, omitting some of its verbiage, it reads as follows: (1) Upon the death of Bridget Agnes Daly, to convey the said property to such child or children of Mary Elizabeth Boylan, sister of the said John K. Daly, as he shall by an instrument under his hand, or in his last will, direct, c.; (2) if the property be sold, to pay the net proceeds thereof to such children of Mary Elizabeth Boylan as he shall appoint, c., and (3) to assign the securities by which the same (meaning thereby the net proceeds) shall then
be represented, to such child or children, c. Here it is perfectly plain that it was the donor's intention that immediately upon the death of Bridget Agnes Daly the children of Mary Elizabeth Boylan appointed should enter into the possession and enjoyment of the property. It was not the intention of the donor that the donee of the power should withhold his appointment for years and allow the title to remain in suspense by reason of the non-execution of the power. It would be rather absurd to say that the donor expected, as in this case, that the donee should omit to exercise his power of appointment for twenty-one years. He not only, by reasonably plain language, specifies the death of Bridget Agnes Daly as the time when the appointment should be made, but he directs the payment of the net proceeds, if sold (meaning before the death of Bridget Agnes Daly), and, if the net proceeds are invested, to assign the securities in which the same shall then be represented (that is, the investments as they existed at the time of the death of Bridget Agnes Daly); all of which clearly indicates that his purpose was that the power of appointment should be exercised immediately after the death of Bridget Agnes Daly by an instrument under his hand, if he survived Bridget, or by will if he predeceased her; for under no other condition could this will operate within a reasonable time, as his will would not speak until the time *Page 591 
of his death, which might happen a half century after the death of Bridget.
My present view is that, after this long lapse of time, coupled with the fact that John K. Daly has been endeavoring to make a settlement with the persons to whom he was to appoint, for his own benefit, and his buying the property in at a tax sale in order to defeat the power, and his counter-claim denying the validity of the trusts for complainants, rather indicate a state of mind where he not only did not intend to exercise the power, but to defeat it. In Pom. Eq. Jur. (3d ed.) 687 § 411, Professor Pomeroy said:
"Where a power in trust is given to appoint among the members of a designated class, as among `the children' of the donee, and the like, the donee upon whom the power is conferred can appoint in favor of any one of the class, and a court of equity will not interfere with his discretion. Where the donee, however, fails to make any appointment, and, of course, makes no selection of a particular beneficiary out of the class, a court of equity will carry out the power, under the principle of equality, by dividing the fund subject to the power in equal shares among all the persons composing the designated class."
I have therefore reached the conclusion that the eldest son of Dennis Gallagher should be decreed to convey to all the children of Mary Elizabeth Boylan. I have reached this conclusion more readily because all of the children of Mrs. Boylan have asked for a conveyance of them. Biggs v. Peacock, 22 L.R. Ch. Div. 284.
A decree will be advised in accordance with the foregoing views. *Page 592