The trustee under an inter vivos trust created by Frank L. Humphreys, late of Connecticut, asks whether it should contribute to the payment of the federal estate tax assessed against the executors of the settlor's will. The gross estate of decedent was appraised for the purpose of the tax at $238,000, of which $161,000 was the value of property owned by testator at his death and $77,000 represented the assets of the inter vivos trust. The tax assessed is $18,819, and the executors demand that the trustee of the inter vivos trust pay a ratable part of the tax, $6,078. I find no liability on the part of the trust estate to share the burden. Ericson v. Childs (Conn.),198 Atl. Rep. 176; 115 A.L.R. 907. But Mrs. Humphreys, the life beneficiary of the trust, and all the adult remaindermen, join in the request of the executors that the trustee contribute to the tax. If they are the only beneficiaries, their wishes will be heeded and the trustee will be instructed accordingly. There are infants, however, whose guardian ad litem claims for them a contingent remainder in the trust estate and who cannot, because of their infancy, consent. So the question arises whether the infants are interested.
In 1922, Humphreys made a settlement upon his wife from whom he was estranged. He transferred to the complainant certain shares of stock and real estate in trust to pay the net income to her for life. The remainder was disposed of in two paragraphs:
First — 2. "Upon the death of said Jean T. Humphreys to divide the said 500 shares of stock into as many equal shares or parts as there shall be children of the said Frank L. Humphreys and said Jean T. Humphreys and/or children of any deceased child perstirpes and not per capita then living and to deliver the same to each of the said children of said Frank L. Humphreys and said Jean T. Humphreys and the children of any deceased child perstirpes and not per capita, (the children of any deceased child to take share and share alike the share or part his or her parent would have been entitled to if living) to be his or her property absolutely and forever."
"Eleventh: Upon the death of the said Jean T. Humphreys, the Trustee shall forthwith divide the principal of the trust estate equally among the children of the said Frank L. Humphreys and Jean T. Humphreys and/or the children of the deceased child perstirpes and *Page 241 
not per capita to be their exclusive and sole property forever. In the distribution of the principal the property shall be distributed in kind as far as practicable."
While the paragraph first quoted relates only to the devolution of the corporate shares, the other paragraph is not confined to the real estate but purports to dispose of the remainder in the whole trust estate. The two paragraphs, despite slight variations in language, were undoubtedly meant to have the same effect, that is, the shares of stock and the real estate or its proceeds were intended to pass to the same persons. The trust indenture contains the following provision for amendment:
"Twelfth: During the lifetime of both said Frank L. Humphreys and Jean T. Humphreys, they may by written instrument, executed and acknowledged by both of them, vary the terms of this Indenture with respect to the amounts of moneys and securities to be paid over and delivered to any of the children of said Frank L. Humphreys and said Jean T. Humphreys, and may provide for unequal distribution thereof among said children, or wholly exclude any one child or any children from any interest under the terms of this Indenture, and any such written instrument so signed and acknowledged, and served upon the Trustee or any successor Trustee hereunder shall be deemed to be a modification of and a part of this Indenture."
When the trust was created, the settlor and his wife had five children, Landon, George, Malcolm and David Humphreys, and Helen Humphreys Jones. Mrs. Jones died January 17th, 1923, leaving two children, Walter and David. By an instrument dated May 12th, 1925, Mr. and Mrs. Humphreys amended or attempted to amend the eleventh article of the trust to read as follows:
"Eleventh: Upon the death of the said Jean T. Humphreys, the trustee shall forthwith divide the principal of the trust estate equally among David Humphreys, Malcolm Humphreys, Landon Humphreys and George F. Humphreys, children of said Frank L. Humphreys and Jean T. Humphreys, to be their exclusive and sole property forever. In the distribution of the principal, the property shall be distributed in kind as far as practicable."
Landon, George and David Humphreys, children of the settlor, have several children, some of whom are the minors *Page 242 
whose alleged interest in the trust must be considered. The two sons of Mrs. Jones point out that their interest in the trust fund vested upon the death of their mother and before the trust instrument was amended; and they argue that the reserved power of amendment was not broad enough to cut off their vested estate. I cannot pass on their argument since they are of full age and consent to payment out of the trust of a ratable part of the tax; but my conclusions on the case of the infants probably applies as well to the contention of Mrs. Jones' sons.
The original indenture limited the remainder to a class which was then composed of the children of the settlor and his wife. In effect, the gift to each child was subject to divestment if he should predecease his mother, and on the happening of that contingency, his children were substituted for him as donees. By the amendment, instead of a class gift, the remainder is given to four named children, and the remainder is no longer contingent on surviving Mrs. Humphreys. If it shall happen that any of them die in her lifetime, his interest continues as part of his estate. While the amendment does not mention subparagraph 2 of the first article, it clearly has the effect of amending that paragraph as well as the eleventh paragraph, since it clearly purports to govern the distribution of the entire trust fund. If the amendment is effective, the grandchildren of Mr. and Mrs. Humphreys have now no interest in the fund, contingent or otherwise. Whether or not the amendment is effective depends on the twelfth paragraph.
The twelfth paragraph authorizes amendments "with respect to the amounts of moneys and securities to be paid over and delivered to any of the children" of the settlor, "and may provide for unequal distribution thereof among said children, or wholly exclude any one child or children." The guardian adlitem urges a literal and strict interpretation of this reserved power. While there may be amendment with respect to the amounts payable to the children of Mr. Humphreys, there can be none affecting the amounts payable to his grandchildren. By amendment, one of his children may be excluded, but not one of his grandchildren. Mr. and Mrs. Humphreys *Page 243 
could double the share of a child provided he outlive his mother, but they could not strike out the proviso.
In my opinion, this mode of interpretation is fallacious. "The aim of a court of equity in construing a trust deed is and should be to ascertain and carry out the settlor's intent." DeBrabant
v. Commercial Trust Co., 113 N.J. Eq. 215; Palisades Trust, c.,Co. v. Probst, 128 N.J. Eq. 332. The court must consider the general scope and purpose of the entire instrument. Criss v.Smith (Md.), 133 Atl. Rep. 110. This principle governs the interpretation of a power contained in a trust deed. In furtherance of the object which the settlor had in view, the court may enlarge or cut down the power as the case may require.4 Kent Com. 345; Ryan v. Daly, 99 N.J. Eq. 585; 101 N.J. Eq. 505; U.S. Trust Co. v. Montclair Trust Co., 133 N.J. Eq. 579.
The immediate purpose of Mr. Humphreys was to provide for the maintenance of his wife. Beyond that, his primary aim was to benefit those closest to them both, namely, their children. To them he gave an interest which vested immediately, subject only to defeasance by death within the lifetime of their mother. By contrast, the settlor's concern for his grandchildren was more remote. They were more remote in blood; some were yet unborn, while those who had been born before the creation of the trust were very young. His provision for them was contingent and secondary. Under the indenture, a grandchild could take only as a substitute, in the place of his deceased parent.
Such being the general plan of the trust, it seems to me incredible that Mr. Humphreys intended to reserve to himself and Mrs. Humphreys power to cancel the gift to a child of theirs and yet be unable to cancel a gift to his issue, their grandchildren. The express power to exclude a child who was a primary beneficiary of the trust, carries by implication a power to exclude grandchildren who could take only as representatives of the child.
I reach the conclusion that the amendment was valid and effective and that the infants have no interest in the trust estate. Since all the beneficiaries desire the trustee to contribute to the tax, the decree will instruct the trustee to do so. *Page 244