[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 335 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 336 
The object of this proceeding is to construe a trust agreement entered into between the plaintiff and The Safety Car Heating and Lighting Company, Inc., hereinafter referred to as the Company, and the will and codicils of Walter L. Conwell, deceased.
Walter L. Conwell had been associated with the Company since January 1, 1916. He was president and director continuously from 1919 to the date of his death on May 27, 1948. On December 20, 1941, when he was over 64 years of age, a contract of employment was entered into whereby he was engaged as general manager at an annual salary of $30,000. Further, the Company in recognition of his services agreed to create a retirement fund for his benefit by paying over to a trustee the sum of $100,000 and on the 31st day of December in succeeding years an additional sum of $30,000. Pursuant to said employment agreement, on December 23, 1941, the Company entered into a trust agreement with the plaintiff, The National State Bank of Newark, as trustee. The pertinent provisions of this trust agreement are as follows:
"4 (a) The primary purpose of this Agreement is to provide for the financial and economic security of C during the remainder of his life after he ceases to be actively identified with the Company.
"(b) On December 31, 1946, at which date the Employment Agreement will expire, or, if the Company shall have theretofore certified to the Trustee that said Employment Agreement has been extended to a subsequent date, as provided therein, then, on such subsequent date, the Trustee shall pay and distribute to C said Retirement Fund, either in one distribution or in instalments of varying amounts, over such period of time as the Company, from time to time, shall direct.
 * * * * * * *
"(e) If all the property constituting the Retirement Fund shall not have been paid to C during his lifetime, the balance remaining in the hands of the Trustee shall, on the decease of C, be paid to his widow and/or nephews and nieces or their descendants, as C may provide by his Last will and Testament; and if C shall fail to make such appointment in his said Will, the said property shall be paid and delivered to the person or persons who would have been entitled to his estate under the laws of the state of his residence, on his decease, if he had died intestate."
Prior to the execution of the foregoing agreement, Mr. Conwell, on February 16, 1938, executed his will. Later, he *Page 338 
made four codicils to the will, but we need be concerned only with the last two. Under Article Fifth of the will, the testator left the entire residue of his estate in trust to pay the income to his wife, Lillian Pantall Conwell, for life. Upon her death the principal was to be divided into three equal parts, each in trust, to pay the income to his nephews, Joseph Danby Conwell and Lewis Anthony Conwell, and to his niece, Margaret Conwell Morrison, during their lives, with remainder over as they should appoint, or in default of appointment, to their next-of-kin. After the execution of the employment and trust agreements, Mr. Conwell, on November 24, 1944, made a third codicil, in which he specifically exercised the power of appointment under the trust agreement, directing that all property constituting the retirement fund held by the trustee "shall be added to the residue of my estate and disposed of for the benefit of my wife, Lillian Pantall Conwell, my nephews, Joseph Danby Conwell and Lewis Anthony Conwell, and my niece, Margaret Conwell Morrison, all as provided in Article Fifth of my Will." Subsequently, on March 16, 1948, he executed the fourth and last codicil to his will, whereby he revoked the Fifth Article of his will and in lieu thereof substituted a new Article Fifth. In this, he left the entire residue of his estate in trust to pay the net income to his wife for her life; at her death, he gave $5,000 to his nephew, Lewis Anthony Conwell, and directed that the balance be divided into three equal parts, each in trust, to pay the income to his nephew, Joseph Danby Conwell, and his nieces, Margaret Conwell Morrison and Luella E. Conwell, during their respective lives. Upon the death of Joseph and Margaret, the principal of their trusts is subject to general testamentary powers of appointment with gifts over in default of appointment to their respective next-of-kin. Thus, the effect of the last codicil was to reduce the bequest to Lewis Anthony Conwell from one-third of the residue to $5,000 and to add his niece, Luella E. Conwell, as beneficiary of a life interest in one-third of the residue. However, Luella E. Conwell died on June 2, 1949, after the institution of this suit, and her death has been suggested upon the record. *Page 339 
Mr. Conwell was survived by his widow and eight nephews and nieces. Four of them are children of a deceased brother, Sidney D. Conwell, and they are the beneficiaries under the will and codicils. The other four are children of a deceased sister, Luella E. Brown, and are not named as beneficiaries.
The first issue raised is the character of the power granted Conwell in the retirement trust agreement and whether the decedent effectively exercised it. The plaintiff and the defendant, Lilliam Pantall Conwell, widow of the testator, argue that the power of appointment was nonexclusive and was not effectively exercised; that the trust fund is, therefore, to be distributed as though the decedent had died intestate; and, accordingly, the widow is entitled thereto. The defendants, Margaret Conwell Morrison, Joseph Danby Conwell and Lewis Anthony Conwell, contend that the power was exclusive and was effectively exercised.
The second issue relates to the liability of the trust estate for reimbursement to the executor of any federal estate or New Jersey inheritance taxes which may be assessed and paid by the executor with respect to the trust assets. On this issue, there is a division of opinion. The plaintiff and all the defendants, with the exception of the executor, contend that if the power of appointment was exercised effectively, all taxes are payable from the testamentary estate under the Sixth Article of the will. The executor urges otherwise.
 I.
The first question is whether the power of appointment was exclusive or nonexclusive. "Powers of appointment are necessarily either exclusive or non-exclusive, according to the reasonable import of the language creating them." 41 Am. Jur., Powers, § 63. The plaintiff and the defendant, Mrs. Conwell, argue that the power of appointment granted the decedent under the trust agreement to appoint the trust assets to his "widow and/or nephews and nieces" was a non-exclusive power; that thereby Conwell had no right of selection except to appoint to his widow and all of his nephews and nieces; and that the purported exercise of the power by *Page 340 
the codicil to the will was rendered ineffective because he excluded certain nephews and nieces. The distinction between an exclusive and a nonexclusive power of appointment is thus stated in 49 C.J., Powers, § 51, 52:
"A power is exclusive when there is granted to the donee the right to appoint to any of the designated objects to the exclusion of others; and so such a power may be exercised by the donee by appointing to such of the objects excluding others, and in such share, as he may see fit.
"A power of appointment is non-exclusive when no right of selection among the objects or of exclusion of any of them is given to the donee. So, under a power containing no words of exclusion, the property must be so distributed, if the power is exercised, that all the objects shall have some portion of it, and the exclusion of any member of the designated class in making the appointments invalidates the attempted exercise of the power. Unless an intention is shown in the instrument creating a non-exclusive power of appointment that the appointees shall take equally, however, the donee may appoint such shares as he thinks fit, subject to the rules relating to illusory appointments."
Hopkins v. Dimock, 138 N.J. Eq. 434 (Ch. 1946); affirmed,140 N.J. Eq. 182 (E. A. 1947).
The familiar rule of construction is that "the intention of the donor of the power is the great principle that governs in the construction of powers, and in furtherance of the object in view the courts will vary the form of executing the power, and, as the case may require, either enlarge a limited to a general power, or cut down a general power to a particular purpose." Ryan v.Daly, 99 N.J. Eq. 585 (Ch. 1926); affirmed, 101 N.J. Eq. 305,306 (E. A. 1927); U.S. Trust Co. v. Montclair TrustCo., 133 N.J. Eq. 579 (Ch. 1943); Fidelity Union Trust Co.v. Warren, 135 N.J. Eq. 239 (Ch. 1944); Marx v. Rice,1 N.J. 574 (1949). Restatement, Property, § 360, declares:
"The donee of a special power may, by an otherwise effective appointment, exclude one or more objects of the power from distribution of the property covered thereby, unless the donor manifests a contrary intent. * * *
"Comment. A. Rationale. The nature and scope of the discretion given to the donee depends upon the intent of the donor. When the donor creates a power of appointment it is inferable that he intends *Page 341 
the donee to be unrestricted in its exercise except as restrictions are affirmatively imposed. * * * Unless the contrary is indicated, it is to be inferred that the donee is intended to have as broad a power of selecting among the objects, including the power to exclude one or more, as the donor would have had at the time of creating the power or as the donee has with reference to his owned property. Hence this Section states that the donee may exclude one or more objects (an exclusive power) unless the donor forbids him to do so (a non-exclusive power). * * * C. Contrary Intent. The purpose and value of powers of appointment lie in the flexibility of disposition which they permit * * *; restrictions on this flexibility are not lightly to be inferred. However, if the donor by adequate language indicates an intent that the power shall be non-exclusive, that intent is given effect. * * *"
While the Company was the donor and Mr. Conwell the donee of the power, it is reasonable to assume from the facts in this case that the Company was merely acting for or expressing Conwell's intention. The agreement between the Company and the plaintiff as trustee was in conjunction with Mr. Conwell's employment contract with the Company. The retirement fund was compensation for Conwell's services to the Company. The whole of it was for his benefit — the trust agreement provided that "the trustee shall pay and distribute to Conwell said retirement fund either in onedistribution or in instalments." (Italics added.) Only the balance remaining in the hands of the trustee at Conwell's death was to be paid to his "widow and/or nephews and nieces, as he may provide in his will." Disregarding for the moment the ambiguity which arises from the use of the terms "and/or" and "provide," the argument that the power was nonexclusive and that to effectively exercise the power, it was incumbent upon Mr. Conwell to include all of his nephews and nieces as well as his wife, lacks merit. Indeed, it appears from the evidence that Mr. Conwell intended that his sister's children should not share in his estate. In his will drawn prior to the trust agreement and in the codicils subsequently drawn, he did not include all his nephews and nieces — he consistently excluded the children of his deceased sister in all his testamentary dispositions. There is not the slightest indication that he intended that his widow and all his nephews and nieces should be his beneficiaries. *Page 342 
Moreover, the retirement fund being compensation for Mr. Conwell's services, the implication is clear that he was to have control over it. There is no reason to believe that the Company had any interest whatsoever in the nephews and nieces of Mr. Conwell, or which of them he designated as beneficiaries. If he had received the retirement fund in one distribution, as the agreement permitted he might, it would, of course, have become part of his testamentary estate. If he did not use the fund in his lifetime, he maintained control over it by the power which the agreement vested in him. He could elect to appoint by his will the beneficiaries of the balance of the retirement fund or he could elect not to appoint by his will, in which latter event the trust fund would pass according to the laws of intestacy. His only heirs-at-law and next-of-kin were his widow and his nephews and nieces. He is presumed to have known that if he did not exercise the power and died intestate with respect to the trust fund, his widow would have become entitled to it, to the exclusion of all his nephews and nieces.
"Courts, it is true, sometimes in construing wills read `or' as meaning `and,' and `and' as meaning `or,' but such departures from the words of the will are never made, except it is plain that it is necessary to do so in order to give effect to what appears to be the clear intention of the testator." Cody v.Bunn, 46 N.J. Eq. 131 (Ch. 1889). In this case, that Conwell was to have freedom in the choice of beneficiaries is further demonstrated by the use of the term "and/or." The testator could appoint to his "widow and/or nephews and nieces." The hybrid term has been repeatedly criticized. Harcher v. Hurley, 116 N.J.L. 18
(Sup. Ct. 1935); Fisher v. Healy's Special Tours, Inc.,121 N.J.L. 198 (E. A. 1938); Morris Plan, etc., N.Y. v.Kemeny, 123 N.J.L. 389 (Sup. Ct. 1939); Ward v. JerseyCentral Power Light Co., 136 N.J. Eq. 181 (Ch. 1945);Notes, 118 A.L.R. 1367 and 3 C.J.S. 1069.
The facts established in this case, the reasonable inferences to be drawn therefrom, and my construction of the trust instrument lead me to the conclusion that it was the *Page 343 
intention that Conwell have control over the fund to the extent of using it for himself in his lifetime or disposing of it to or among his widow or nephews and nieces or any of them as he might specify in his will.
The cases of Lippincott v. Ridgway, 10 N.J. Eq. 164 (Ch.
1854); 11 N.J. Eq. 526 (Ch. 1858); Wright v. Wright,41 N.J. Eq. 382 (Ch. 1886); Cameron v. Crowley, 72 N.J. Eq. 681
(Ch. 1907), and Hopkins v. Dimock, supra, are each distinguishable upon the facts.
Having concluded that the power of appointment was exclusive, was it effectively exercised? Whether a power has been exercised by an instrument executed by the donee of the power depends upon the donee's intention that it should operate. The simplest method of showing such intent is by express declaration. Page, Wills,Lifetime Ed., Vol. 3, § 1331, page 902. At the time of the execution of the trust instrument, Conwell had already drawn his last will and testament. Therefore, by codicil he specifically and expressly exercised the power of appointment. This was an effective exercise.
 II.
The Sixth Article of Mr. Conwell's will provides as follows:
"SIXTH: I direct that all bequests and other provisions for any beneficiary created in this Will shall be free from any and all legacy, transfer inheritance, state or succession taxes, and federal estate taxes, and that any and all taxes which may be due in respect to said bequests or other provision shall be paid by my executors and trustees out of my residuary estate, which is hereby charged with the payment thereof."
The will antedated the trust agreement. The trust assets passed under the power of appointment exercised by the third codicil wherein the testator expressly provided that the retirement fund "shall be added to the residue of my estate." As previously stated, the fourth and last codicil revoked Article Fifth of the will and substituted a new Fifth Article. This merely altered the previous bequests to his *Page 344 
widow and his nephews and nieces, and in all other respects ratified and confirmed his will and the three previous codicils. Accordingly, the foregoing tax provisions of the will apply to the property passing under the codicil as though a part of the residuary estate of the original will.
"If the codicil merely increases or alters a previous gift to the same person, the gift so rearranged is subject to the same conditions as the previous gift including freedom from legacy duty." Rippel v. King, 126 N.J. Eq. 297 (Ch. 1939); affirmed, 128 N.J. Eq. 179 (E. A. 1940).
Generally, inheritance taxes are to be paid by each legatee or devisee and if paid by the executor he is entitled to reimbursement unless there is a testamentary provision to the contrary. While federal estate taxes are obligations of the testamentary estate, primarily payable by the executor, there are circumstances, irrelevant to this discussion, when the executor is entitled to reimbursement for taxes paid on assets included for tax purposes in the gross estate of the decedent, unless the will provides to the contrary. The controlling consideration with respect to the payment of taxes or reimbursement for taxes paid is to give effect to the intention of the testator if it can be ascertained from the will itself. Gaede v. Carroll,114 N.J. Eq. 524 (E. A. 1933); Turner v. Cole, 118 N.J. Eq. 497
(E. A. 1935); Hackensack Trust Co. v. Ackerman,138 N.J. Eq. 244 (Ch. 1946); Montclair Trust Co. v. Spadone,139 N.J. Eq. 7 (Ch. 1946); Bankers Trust Co. v. Hess,2 N.J. Super. 308 (Ch. Div. 1949); Goldman v. Goldman,2 N.J. Super. 412 (Ch. Div. 1949).
Clearly, the payment of taxes was within the contemplation of the testator. The provisions of Article Sixth of the will are clear, certain and hardly susceptible of misconstruction. Conwell unequivocally directed that inheritance and federal estate taxes which might become due with respect to any bequest or other provision created by his will should be paid out of the residuary testamentary estate, without reimbursement. Such unambiguous direction should prevail.
Judgment accordingly. *Page 345